TEXAS STATE BOARD OF DENTAL
EXAMINERS, Petitioner,

v.

Charles W. SIZEMORE, DDS,
Respondent.

No. C–7369.

Supreme Court of Texas.

June 22, 1988.

Rehearing Denied Nov. 23, 1988.

Jim Mattox, Atty. Gen., Austin, Brooks W. Conover, III, Asst. Atty. Gen., for petitioner.

Joe Alfred Izen, Jr., Bellaire, for respondent.

## OPINION

PHILLIPS, Chief Justice.

This is an appeal by a dentist from an order by the Texas State Board of Dental Examiners suspending his license for five years, all but 120 days of which were probated, and revoking his certificate to prescribe narcotics for a period of at least two years. The trial court upheld the Board's

decision. With four justices dissenting, the court of appeals, sitting en banc, reversed the judgment of the trial court, holding that the revocation and suspension were not supported by substantial evidence. 747 S.W.2d 389 (1987). Because we conclude that the majority of the court of appeals erred in both its formulation and application of the substantial evidence test, we reverse the judgment of that court and affirm the decision of the district court.

The Texas State Board of Dental Examiners conducted a hearing based on alleged violations by Dr. Charles W. Sizemore of the Dental Practices Act, TEX.REV.CIV. STAT. art. 4543 *et seq.*, and of certain rules of the Board. Following the hearing, the Board found that Dr. Sizemore prescribed Percodan[1] and Tylox[2], in excess of generally accepted dosages for dental treatment to three of his patients, where the prescription and use of such would promote and further addiction. The Board also found that Dr. Sizemore failed to enter the narcotic drug prescriptions in the dental records of two of the patients on nineteen separate occasions.

Hearings and the appeal from hearings on disciplinary actions against dentists are governed by the Administrative Procedure and Texas Register Act (APTRA), TEX. REV.CIV.STAT. art. 6252–13a. The scope of judicial review under the Act is set forth as follows:

> The scope of judicial review of agency decisions is as provided by the law under which review is sought.... Where the law authorizes review under the substantial evidence rule, ... the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discre-

tion but may affirm the decision of the agency in whole or in part and shall reverse or remand the case for proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> . . . . .

> (5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole....

TEX.REV.CIV.STAT. art. 6252–13a, § 19(e).

The substantial evidence test is applicable to cases involving judicial review of decisions of the Board of Dental Examiners. TEX.REV.CIV.STAT. art. 4548h, § 3(e). The test, as stated many times by this court, is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *E.g., Dotson v. Texas Bd. of Medical Examiners*, 612 S.W.2d 921, 922 (Tex. 1981); *Railroad Comm'n v. Shell Oil Co.*, 139 Tex. 66, 79–80, 161 S.W.2d 1022, 1029 (1942). In determining whether there is substantial evidence, the reviewing court may not substitute its judgment for the Board's, but must consider only the record upon which the decision is based. *Railroad Comm'n v. Entex, Inc.*, 599 S.W.2d 292, 298 (Tex.1980). The burden is on the complaining party to demonstrate an absence of substantial evidence. *Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex.1974).

In reversing the trial court, however, the court of appeals disregarded the

---

**1.** Percodan is a Schedule II narcotic and is a trademark product of DuPont Pharmaceuticals, Inc. *Physician's Desk Reference* 409, 931 (42d ed. 1988). It is a chemical relative of morphine, retrieved from the opium alkaloid, thebaine. It is a strong narcotic analgesic that relieves pain centrally. It produces pharmacologic actions equivalent to those of morphine, including sedation, drowsiness, suppression of reflexes, nausea, vomiting, respiratory repression, and physical and psychological dependence.

**2.** Tylox is also a Schedule II narcotic and is a trademark product of McNeil Laboratories. Its active ingredients are the common pain relief medicine acetaminophen and the drug oxycodone, which is derived from the opium alkaloid, thebaine. Oxycodone is qualitatively similar to morphine. Its principal therapeutic values are for pain relief and sedation. The drug can produce drug dependence similar to morphine. Pyschic dependence, physical dependence, and tolerance may develop upon repeated administration. *Physician's Desk Reference* 417, 1249 (42d ed. 1988).

traditional formulation of the substantial evidence test, purportedly on constitutional grounds. The court concluded that for revocation of a license to satisfy due process, there must be "proof of conduct injurious to the public welfare; proof ... of negligence, incompetence, or wilful misconduct." 747 S.W.2d at 397. Since the Board's action was "punitive in effect" and a "quasi-criminal" proceeding, the court of appeals also held that "evidence of conduct injurious to the public welfare must be substantial" in order to uphold the order.

These holdings are in error. Due process concerns place no such restraints on the right of the state, in the exercise of its police power, to regulate the licensing of dentists. "That the State may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary and to that end may require licenses and establish supervision by an administrative board is not open to dispute." *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 611, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935).

Moreover, substantial evidence review does not permit the court of appeals to substitute its own judgment for that of the Board. "The reviewing court is concerned only with the *reasonableness* of the administrative order, not its *correctness*." *Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex.1984) (emphasis added). Section 19(e) of the APTRA clearly forbids the court from usurping the agency's adjudicative authority even though the court may have struck a different balance. *Gerst v. Goldsbury*, 434 S.W.2d 665, 667 (Tex.1968).

Thus, we are presented solely with the question of whether substantial evidence exists in the record to support the Board's action. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W. 2d 446, 452 (Tex.1984); *Imperial American Resources Fund, Inc. v. Railroad Comm'n*, 557 S.W.2d 280, 286 (Tex.1977). Under this test, we find that some reasonable basis exists for the Board's action. *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex. 1966).

■ In its first two conclusions of law, the Board found that Dr. Sizemore (1) improperly prescribed controlled substances not necessary or required in the practice of dentistry, or where such would promote addiction, TEX.REV.CIV.STAT. art. 4551h; and (2) grossly over-prescribed narcotic drugs. TEX.REV.CIV.STAT. art. 4549, § 2(c)[3]. We hold that these findings are supported by substantial evidence.

The Board's findings of fact related to Dr. Sizemore's treatment of three patients: Danny McKay, Roxanne Sabato, and Kenneth Cook. Dr. Arthur Jeske, an associate professor of pharmocology and restorative dentistry at the University of Texas at Houston, provided expert testimony for the Board.

At the hearing before the Board, Dr. Sizemore admitted that he prescribed 280 capsules of Percodan to Danny McKay over a 12–month period. McKay received the prescriptions for complaints related to temporal mandibular joint (TMJ) pain. Dr. Jeske testified that the dosages given were in excess of generally accepted dosages for treatment of pain, particularly when "no definitive dental therapy was performed to alleviate the problem." During the 12–month period, Dr. Sizemore only sought to treat the TMJ condition twice. Admitting that McKay received no dental treatment for over four months because McKay had no time for the necessary procedures, Dr. Sizemore concluded that his judgment "was not so good" and that he "may have been used by [McKay]." Even on the two occasions when Dr. Sizemore did perform some sort of treatment, Dr. Jeske testified that the prescriptions of Percodan were both unnecessary and addictive.

Dr. Sizemore also admitted to prescribing a total of 220 tablets of Percodan and Tylox to Roxanne Sabato, who was being treated for an infection. Percodan contains aspirin, to which Sabato is allergic, and Dr.

---

**3.** This is the section given in the Board Order and cited to in the opinion below. The correct reference should be to TEX.REV.CIV.STAT. art. 4549, § 3(c). The confusion apparently results from an unclear numbering system in an earlier version of the statute.

Sizemore admitted to overlooking this allergy in writing the prescriptions. On six separate occasions, Dr. Sizemore wrote prescriptions for Percodan that were not accompanied by prescriptions for an antibiotic. Dr. Jeske testified that at least three of these six prescriptions were unnecessary, and that the generally accepted duration of Percodan treatment for severe pain of the type Sabato experienced would have been five days.

Finally, Dr. Sizemore admitted to prescribing a total of 382 Percodan capsules to Kenneth Cook over a six-month period. Cook was suffering from upper-anterior pain in his teeth. For two months, Dr. Sizemore prescribed Percodan and antibiotics prior to extracting the problem teeth. Dr. Jeske testified that prescriptions of Percodan were neither necessary nor required after the first two weeks of antibiotic therapy. Following extraction of the first problem teeth, Cooke again reported tooth pain and was again placed on a regimen of antibiotics and Percodan. Dr. Jeske testified that two weeks of treatment with Percodan was justified, but that the prescriptions written after that time were no longer necessary or justified. Dr. Sizemore himself admitted that he "would not have continued to prescribe" the Percodan had he "noticed how much he was giving." According to Dr. Jeske, prescriptions of Percodan over the period of time Cooke received them could promote or further addiction.

Taken together, this evidence provides a reasonable basis for the Board's first two conclusions of law. *See Texas Health Facilities v. Charter Medical–Dallas*, 665 S.W.2d at 452.

 The Board also concluded that Dr. Sizemore violated TEX.REV.CIV.STAT. art. 4549, § 3(j) by violating Board Rule No. 382.19.15.004, 22 TEX.ADMIN.CODE § 109.144(c) (1986), in that he failed to make the prescription of narcotic drugs a part of his patients' dental records. According to the undisputed evidence, Dr. Sizemore made only two entries on McKay's records regarding prescriptions of a narcotic drug and failed to note four such prescriptions on Sabato's records. This undisputed evidence provides a reasonable basis for the Board's conclusion.

We, therefore, hold that the evidence as a whole was such that reasonable minds could have reached the conclusions that the Board must have reached in order to justify its action. We reverse the judgment of the court of appeals and affirm the decision of the district court upholding the order of the Board.