**NABISCO, INC., and Planters/Life-savers Company, Appellants,**

v.

**Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellees.**

No. 03–98–00399–CV.

Court of Appeals of Texas,
Austin.

May 6, 1999.

Gilbert J. Bernal, Jr., Stahl, Martens & Bernal, L.L.P., Austin, for appellant.

John Cornyn, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Taxation Division, Austin, for appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Appellants Nabisco, Inc., and Planters/Lifesavers Company ("Planters")[1] filed suit after the Texas Comptroller of Public Accounts (the "Comptroller") refused to refund franchise taxes for which appellants claimed a deduction under section 171.104(1) of the franchise tax statute. *See* Tex. Tax Code Ann. § 171.104(1) (West 1992). Appellants sought a refund for their denied deduction as well as a declaratory judgment that the Comptroller's rule interpreting section 171.104(1) is contrary to the franchise tax statute. Following a bench trial, the trial court held that the Comptroller's rule is not contrary to the statute and that appellants are not entitled to a refund. Nabisco and Planters raise three issues for review challenging the final judgment rendered by the trial court in favor of appellees, the Comptroller and the Attorney General of Texas.[2] We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Nabisco and Planters manufacture and sell snacks, cookies, and other food products in Texas and elsewhere. Most of their products sold in this state are manufactured out of state and then shipped to Texas distribution facilities. Nabisco has two manufacturing sites in Texas: a Biscuit Division in Houston and a Refrigerated Division in Denison. Planters has no manufacturing sites in Texas. The Nabisco and Planters sales at issue involve food products shipped from manufacturing sites outside of Texas and stored in Texas distribution centers while appellants await orders from Texas buyers.

Texas buyers such as H.E.B. and Wal-Mart order products from appellants' Texas facilities. Orders are transmitted to and processed by the companies' Texas employees at their Texas facilities. They take products out of Texas inventory, load them onto trucks, and deliver them to Texas buyers.

Nabisco and Planters paid Texas franchise taxes based on apportioned net taxable capital, which is apportioned net assets plus stated capital.[3] Tex. Tax Code Ann. §§ 171.002, .101 (West 1992). The tax base is calculated by multiplying against a total taxable capital a fraction representing the percentage of Texas business done by a multi-state taxpayer. *Id.* § 171.101(a)(2). This fraction is known as an "apportionment formula" because it apportions a multi-state corporation's tax base into the amount taxable by Texas and the amount taxable by other jurisdictions. *See, e.g., General Dynamics v. Sharp*, 919 S.W.2d 861, 863–64 (Tex.App.—Austin

---

1. Nabisco is a Delaware corporation legally authorized to do business in Texas. Planters was a Delaware corporation before becoming a division of Nabisco in 1991, and is also legally authorized to do business in Texas.

2. Nabisco and Planters sued John Sharp, the Texas Comptroller of Public Accounts, and Dan Morales, the Attorney General of Texas, in their official capacities. Since this appeal was filed, Carole Keeton Rylander has re-

placed John Sharp as the Texas Comptroller, and John Cornyn has replaced Dan Morales as Attorney General. *See* Tex.R.App. P. 7.2(a).

3. The franchise tax statute defines "stated capital" by incorporating the Texas Business Corporation Act. Tex. Tax Code Ann. § 171.101(a)(1) (West 1992).

1996, writ denied) (affirming constitutionality of single-factor apportionment formula that apportions Texas franchise tax base).

The numerator of the Texas formula consists of gross receipts [4] from Texas business, while the denominator consists of gross receipts from all of the corporation's business. Tex. Tax Code Ann. §§ 171.103, .105, .112 (West 1992); see also Bullock v. Nat'l Bancshares Corp., 584 S.W.2d 268, 270 (Tex.1979) (describing operation of Texas apportionment formula). After apportioned taxable capital is computed by multiplying the Texas formula against the total tax base, the tax rate is multiplied against apportioned taxable capital to calculate the franchise tax.[5] Tex. Tax Code Ann. § 171.002.

The effect of these laws is that a company's net taxable capital increases as its Texas business increases, and decreases as its Texas business decreases. According to the Comptroller's audits, Nabisco's Texas business averaged 5.5% of its total business, and Planters' 6.3%. Treating sales of goods first shipped to a Texas distribution center as out-of-state business would significantly diminish each company's "Texas business," depriving the State of more than $3 million in franchise tax and interest.

Appellants argue that the receipts from the sales at issue are out-of-state business and therefore exempt under section 171.104(1) of the Tax Code. Tex. Tax Code Ann. § 171.104(1). In order for section 171.104(1) to apply, however, the receipts must first be includable under section 171.103. That section provides:

In apportioning taxable capital, the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(1) each sale of tangible personal property *if the property is delivered or shipped to a buyer in this state* regardless of the FOB point or another condition of the sale, and each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is not subject to taxation....

Id. § 171.103(1) (West 1992 & Supp.1999) (emphasis added). Section 171.104 provides:

A corporation may deduct from its receipts includable under Section 171.103(1) of this code the amount of the corporation's receipts from sales of the following items, *if the items are shipped from outside this state* and the receipts would be includable under Section 171.103(1) of this code in the absence of this section:

(1) food that is exempted from the Limited Sales, Excise, and Use Tax Act by Section 151.314(a) of this code....

Tex. Tax Code Ann. § 171.104(1) (emphasis added).

The Comptroller relies on Rule 3.549(e)(20) to limit the applicability of the franchise tax exemption under section 171.104(1). *See* 34 Tex. Admin. Code § 3.549(e)(20) (West 1992). According to section 3.549(e)(20), deductions from Texas receipts for sales of food exempted from the sales and use tax by sections 151.313 and 151.314 [6] are only allowed for the *initial sale* of items shipped from a location

---

4. For determining taxable capital, "gross receipts" means all revenues that would be recognized annually under a generally accepted accounting method, without deduction for the cost of property sold, materials used, labor performed, or other costs incurred. Tex. Tax Code Ann. § 171.112(a) (West 1992).

5. The franchise tax formula can be re-stated as follows: (a) Texas gross receipts ÷ total gross receipts = percentage of Texas business; and (b) taxable capital × percentage of Texas business = net taxable capital × tax rate = franchise tax.

6. Neither party disputes the fact that appellants' food products such as biscuits and cookies are exempt from tax under section 151.314 of the Tax Code. Tex. Tax Code Ann. § 151.314 (West 1992).

outside of Texas directly to a purchaser in Texas; there is no exemption when the items are shipped from outside Texas to an outlet or storage facility before being sold. *See id.;* Tex. Tax Code Ann. §§ 151.313, .314 (West 1992).

At issue in three report years are Nabisco's gross receipts from Texas sales totaling $205,291,266 in year one, $255,334,716 in year two, and $238,613,423 in year three. These amounts represent sales of food products manufactured outside of Texas, shipped to storage facilities in Texas, and later sold to Texas buyers. Nabisco seeks to have these gross receipts deducted from its total Texas gross receipts under section 171.104(1).[7] During the same report years, Planters had total gross receipts from Texas sales in the amounts of $71,655,608, $66,096,307, and $42,745,039. Because all of these sales involved food products shipped from out of state to a Texas warehouse to await a sale to Texas customers, the Comptroller denied any deduction from these gross receipts.

In 1994, Nabisco and Planters filed Petitions for Redetermination and a Claim for Refund with the Comptroller seeking tax refunds plus interest for report years 1989 through 1992 for Nabisco and 1989 through 1991 for Planters.[8] Both appellants claim that they fall under the exemption from the Texas franchise tax provided by section 171.104(1). Tex. Tax Code Ann. § 171.104(1). Appellants sought the following: (1) a franchise tax refund in the amount of $2,155,572 on behalf of Nabisco, (2) a franchise tax refund in the amount of $1,009,239 on behalf of Planters, and (3) a franchise tax protest payment in the amount of $42,472.06 on behalf of Planters, plus interest on those amounts. The Comptroller, relying on section 171.104(1), denied both petitions. Appellants then filed suit in district court disputing the Comptroller's interpretation of section 171.104(1). The trial court held that section 171.104(1) permits franchise taxpayers to deduct sales of "qualified food products"[9] when the products have been *shipped and sold* from out of state to Texas buyers and that Nabisco and Planters are not entitled to such deduction. Nabisco and Planters bring this appeal challenging the Comptroller's interpretation of section 171.104(1) and claiming they are entitled to a refund plus interest for the franchise taxes they paid for the report years in issue.

Nabisco and Planters bring three issues for review: (1) whether their gross receipts from the sales in issue qualify for a franchise tax exemption under section 171.104(1); (2) whether section 171.104(1) is so clear and unambiguous that the Comptroller has no discretion to interpret it; and (3) whether the Comptroller's Rule 3.549(e)(20) interpreting section 171.104(1) is contrary to legislative intent or to the franchise tax statute. All issues assert that the trial court erred in rendering judgment for the Comptroller and deferring to the Comptroller's interpretation of section 171.104(1).

## DISCUSSION

In a case involving agency decision-making, we apply a deferential standard of review. *See Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944); *ADP Credit Corp. v. Sharp,* 921 S.W.2d 490, 493 (Tex.App.—Austin 1996, writ denied). For an agency charged with en-

---

7. When Nabisco shipped food products directly to Texas buyers from an out-of-state manufacturer, the Comptroller granted the deduction from the franchise tax.

8. According to the *Findings of Fact and Conclusions of Law* from the trial court, the report years in issue for both Nabisco and Planters cover three years, but the court record cites to report years 1989 through 1991 for Planters and 1989 through 1992 for Nabisco.

9. Section 151.314 of the Tax Code lists what food products qualify for exemption status. Tex. Tax Code Ann. § 151.314 (West 1992). Neither party disputes the issue of what food products qualify under section 151.314.

forcement of a statute, we give serious consideration to the agency's construction of that statute, so long as the interpretation is reasonable and does not contradict the statute's plain language. *See Stanford,* 181 S.W.2d at 273; *Texas Citrus Exch. v. Sharp,* 955 S.W.2d 164, 168 (Tex. App.—Austin 1997, no writ).

In interpreting section 171.104(1), the parties agree that the statute requires the following to invoke the interstate sales exemption: (1) a shipment of food products exempt from sales tax; (2) from out of state; (3) to a Texas buyer; (4) in a sales transaction; (5) that generates Texas gross receipts. *See* Tex. Tax Code Ann. §§ 171.103(1), .104(1); 34 Tex. Admin. Code § 3.549(e)(20). However, the parties disagree on when the actual sales transaction must occur. Nabisco and Planters contend that sale and shipment of products from out of state to a Texas buyer need not occur simultaneously, while the Comptroller insists that they must. The Comptroller's rule requires section 171.104(1) sales to be made "directly" to a Texas buyer. *See* 34 Tex. Admin. Code § 3.549(e)(20). The parties dispute the amount of deference this Court should give to the Comptroller's rule and its interpretation of section 171.104(1). Nabisco and Planters argue that the Comptroller's rule is contrary to the purpose of the franchise tax statute which grants a deduction for all products that originate from out of state.

Section 171.104 does not specify the timing of the sale; [10] therefore, it is ambiguous in that respect. Because of the ambiguity in section 171.104(1) and because of the Comptroller's duty to enforce the franchise tax statute, [11] we will defer to the Comptroller's interpretation of the statute if it is reasonable. *See Texas Citrus Exch.,* 955 S.W.2d at 168. The Comptroller argues that her restriction of the tax exemption to *interstate sales* and not to Texas-based sales is reasonable and correct because it: (1) is consistent with statutory history and purposes; (2) gives effect to each word of the statute; (3) has been legislatively accepted for twenty-eight years; and (4) maintains a level playing field for Texas and out of state manufacturers. *See* Tex. Tax Code Ann. § 171.401 (West 1992); Tex. Gov't Code Ann. § 403.011 (West 1998). We agree that the Comptroller's interpretation is reasonable.

Section 171.104(1) allows a company to deduct receipts from the sale of food products that are shipped from outside of the state if the receipts are includable under section 171.103(1). *See* Tex. Tax Code Ann. §§ 171.104(1), .103(1). Section 171.103(1) expressly states that receipts from business done in this state include the sale of food products if the products are delivered to a Texas buyer. *See* Tex. Tax Code Ann. § 171.103(1). The Comptroller's rule interpreting 171.104(1) clarifies when the receipts from a sale of food products are entitled to section 171.104's exemption in light of section 171.103. 34 Tex. Admin. Code § 3.549(e)(20). The Comptroller's rule deems receipts deductible only if they are shipped from outside of this state and delivered *directly* to the

---

10. The definition of "sale" under section 151.005 of the Tax Code is as follows:

"Sale" or "purchase" means any of the following when done or performed for consideration:

(1) a transfer of title or possession of tangible personal property;

(2) the exchange, barter, lease, or rental of tangible personal property;

(3) the performance of a taxable service ...

. . .

(8) a transfer of title or possession of tangible personal property that has been produced,

fabricated, or printed to the special order of the customer.

Tex. Tax Code Ann. § 151.005 (West 1992). Broadly speaking, a "sale" is the transfer of tangible personal property, for consideration, between or among separate entities. The timing of a sale would be governed by relevant case law and statutes, such as, but not limited to, the Uniform Commercial Code.

11. *See* Tex. Tax Code Ann. § 171.401 (West 1992); Tex. Gov't Code Ann. § 403.011 (West 1998).

buyer. This rule does not contradict the language in 171.104 in light of 171.103. The statutory predecessor of these sections, article 12.02,[12] adds further credence to the Comptroller's interpretation.

Article 12.02 is relevant for construing the exemption in section 171.104(1) as it exists today. *See* Tex.Rev.Civ. Stat. Ann. art. 12.02(1) (West 1988); 34 Tex. Admin. Code § 3.549(e)(20). When the legislature codified article 12.02, it is presumed to have known and adopted the agency's "interpretation placed on the original act and intended the new enactment to receive the same construction." *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex. 1983).

Before the codification of article 12.02, Texas courts conformed to early twentieth-century federal Commerce Clause jurisprudence by holding that Texas receipts were limited to receipts from Texas-based sales. *See, e.g., Flowers v. Pan Am. Ref. Corp.,* 154 S.W.2d 982, 984 (Tex.Civ.App.—Austin 1941, writ ref'd). The Commerce Clause continued to prohibit states from taxing interstate sales until the 1940s when federal constitutional law began to grant states more authority to tax out-of-state companies doing business within their borders. In these cases, the United States Supreme Court articulated a four-part test which provides that a state's tax does not violate the Commerce Clause if it: (1) "is applied to an activity with a substantial nexus with the taxing state"; (2) "is fairly apportioned"; (3) "does not discriminate against interstate commerce"; and (4) "is fairly related to the services provided by the state." *See Japan Line Ltd. v. County of Los Angeles,* 441 U.S. 434, 444–45, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979); *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Sharp v. House of Lloyd,* 815 S.W.2d 245, 248–49 (Tex.1991);

*Aransas County Appraisal Review Bd. v. Texas Gulf Shrimp Co.,* 707 S.W.2d 186, 191 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). States could choose to tax formerly tax-exempt interstate transactions at either their point of origin or their destination. In 1969, the Texas Legislature enacted article 12.02 to amend the franchise tax statute to include receipts from interstate sales. Out-of-state companies that sold products from out-of-state locations to Texas buyers lost their substantial tax advantage. Texas sellers, on the other hand, gained tax equality. Receipts from Texas-based sales have always been included in Texas receipts; changing the taxability of interstate sales did not affect the taxability of Texas-based sales.

The Comptroller's construction of section 171.104(1) was embodied in earlier versions of the rule at issue here. Under the 1987 version, Rule 3.402, the exemption applied only when the shipment of products from out of state occurred simultaneously with their sale:

> (c)(29) Deductions from Texas receipts for sales of ... food exempted from sales and use tax ... will be allowed only for the sale of items· shipped from a location outside Texas *directly* to a purchaser in Texas.
>
> (A) No deduction from Texas receipts is allowed if the items are subsequently resold.
>
> (B) *The deduction does not apply when the manufacturer ships the items from outside Texas to an outlet or storage facility in Texas and later sells them.*

34 Tex. Admin. Code § 3.402(c)(29) (West 1987) (emphasis added). Rule 3.402(c)(29) is the predecessor of the current rule, Rule 3.549(e)(20). This construction of when a sale and shipment must occur may be deemed to have been legislatively accepted

---

**12.** The 1969 amendment in issue, article 12.02, was codified in 1982 under the statutory revision program as sections 171.103 and 171.104(1) of the Tax Code. *See* Act of June

10, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1697, 1697–98 (effective Jan. 1, 1982).

when the legislature codified article 12.02 in 1982.[13] *See House of Lloyd,* 815 S.W.2d at 247 (reaffirming the legislative acceptance doctrine in *Humble Oil & Refining Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex. 1967)).

The Comptroller's rule at issue deems appellants' sales to be Texas-based sales, not interstate sales, because appellants ship products from out of state to their Texas facilities before selling them to Texas buyers. This rule interpreting section 171.104(1) is reasonable; we therefore affirm the trial court's judgment denying a tax refund to Nabisco and Planters.

## CONCLUSION

Section 171.104(1), which allows a corporation to deduct section 171.103 receipts from Texas sales of food products shipped from out of state, is ambiguous with respect to when the sale of those items must occur. The Comptroller's rule that the sale and shipment of these products must occur simultaneously is a reasonable and long-standing interpretation of section 171.104 that does not contradict the plain language of the statute. This interpretation is also supported by the history and purpose of the interstate sales exemption. Because the Comptroller is charged with enforcement of the franchise tax statute and has issued a reasonable rule to address an ambiguity, we defer to the Comptroller's interpretation. Therefore, we affirm the trial court's judgment upholding the Comptroller's decision to deny a franchise tax refund to appellants.

---

**13.** The state's statutory revision program is a topic-by-topic revision of the state's general and permanent statutes without substantive change. In carrying out this revision program, the legislature intended for neither the sense, meaning, nor effect of any legislative act to be substantively altered. *See* Tex. Tax Code Ann. § 101.001 (West 1992); Act of May 21, 1963, 58th Leg., R.S., ch. 448, § 1, 1963 Tex. Gen. Laws 1152.