TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00822-CV







DaimlerChrysler Corporation, Appellant



v.



James E. Williams and Vicki Williams; and Texas Motor Vehicle Board of the


Texas Department of Transportation, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 99-03934, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING








 DaimlerChrysler Corporation ("Chrysler") appeals the district court's judgment
affirming the Texas Department of Transportation ("TX DOT")'s order that Chrysler repurchase
a vehicle from James and Vicki Williams. Chrysler brings six points of error, arguing that the
district court erred in affirming TX DOT's findings. Chrysler contends it was not afforded a
reasonable number of attempts to repair the vehicle owned by the Williamses, it was not given
appropriate notice or a reasonable opportunity to repair the vehicle, the Williamses did not
produce the quantum of proof required by Section 6.07 of the Motor Vehicle Commission Code
to justify repurchase, and the repurchase requirement imposed by TX DOT was unwarranted. See
Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 6.07(a)-(d) (West Supp. 2000) (commonly called the
"lemon law"). We will affirm the judgment of the district court.

BACKGROUND

 James and Vicki Williams purchased a new Dodge Neon Coupe ("Neon") on July
30, 1997. Soon thereafter, the Williamses began experiencing difficulties with the Neon,
including electrical and transmission problems. On September 30, 1997, the Williamses had the
Neon towed to the Crown Dodge DaimlerChrysler dealership in Katy, Texas ("Crown Dodge"). 
At that point, after only 3782 miles, the car was overheating. Crown Dodge replaced the fan
motor and aligned the exhaust system. Then, on December 1, the Williamses again had the Neon
towed to the dealership because the car was inoperable. The clutch had failed at 7300 miles, and
the car was exhibiting transmission and electrical problems. Crown Dodge replaced the clutch
and a blown fuse. On December 6, Vicki Williams once again took the car to the dealership
because of transmission problems. After waiting three hours, Vicki Williams was told the
necessary mechanic was not available that day and she needed to leave the car at Crown Dodge. 
Vicki Williams declined to do so. James Williams returned to the dealership on December 17
with similar concerns. Crown Dodge told James Williams that it was too busy for anyone to look
at the car at that time and that he should bring the car back after the holidays.

 On January 12, 1998, the Williamses again visited the dealership with transmission
complaints. On this occasion, Crown Dodge replaced the Neon's sync, output shaft bearings, and
seals. On August 4, the Williamses again took the car to the dealership with another transmission
complaint but did not leave the Neon because Crown Dodge said that it would not be able to look
at it that day. Finally, on August 26, 1998, the Williamses filed a complaint with TX DOT's
Motor Vehicle Board, seeking relief under the lemon law. See id. § 6.07(b). In September, after
filing the complaint but before the hearing, the Williamses offered Crown Dodge another
opportunity to cure the defects. The Williamses offered to bring the Neon to Crown Dodge for
repairs at any time after 5:00 p.m. on weekdays or anytime during the weekends. The Williamses
also scheduled at least one appointment to take the Neon in for repairs, but Crown Dodge
canceled this appointment. None of these opportunities resulted in any repairs to the Neon.

 A lemon law hearing was held October 20, 1998. The hearing examiner found that
the Williamses had met the statutory prerequisites and ordered Chrysler to repurchase the vehicle
for $10,017.06. TX DOT adopted the examiner's decision, and Chrysler brought an action for
judicial review. The district court affirmed the decision. Chrysler appeals the district court's
judgment.


STANDARD OF REVIEW

 If a new motor vehicle fails to conform to the manufacturer's express warranties,
TX DOT may order the manufacturer to attempt to conform the vehicle to the warranty. See id.
§ 6.07(b). The statute also authorizes TX DOT to order replacement or repurchase if 


the manufacturer . . . is unable to conform the vehicle to an applicable express
warranty by repairing or correcting any defect or condition which creates a serious
safety hazard or substantially impairs the use or market value of the motor vehicle
after a reasonable number of attempts . . . .



Id. § 6.07(c). The statute delineates situations that create a rebuttable presumption that the
manufacturer had a reasonable opportunity to repair the vehicle. See id. § 6.07(d). In the event
of repurchase, the manufacturer must accept the vehicle's return in exchange for a refund of the
purchase price less a reasonable allowance for the owner's use and any other allowances or
refunds payable to the owner. See id. § 6.07(c); Ford Motor Co. v. Texas Dep't of Transp., 936
S.W.2d 427, 429-30 (Tex. App.--Austin 1996, no writ).

 We review the decision of TX DOT under the substantial-evidence rule. (1) See Tex.
Rev. Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp. 2000). In conducting a substantial-
evidence review, we must determine whether the evidence as a whole is such that reasonable
minds could have reached the conclusion that the agency must have reached in order to take the
disputed action. See Texas State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex.
1988); Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc., 665 S.W.2d 446, 453 (Tex.
1984). We may not substitute our judgment for that of the agency and may consider only the
record on which the agency based its decision. See Sizemore, 759 S.W.2d at 116. If substantial
evidence would support either affirmative or negative findings, we must uphold the order,
resolving any conflicts in favor of the agency's decision. See Auto Convoy Co. v. Railroad
Comm'n, 507 S.W.2d 718, 722 (Tex. 1974). We will sustain the decision if we determine that
reasonable minds could have reached the same conclusion the agency reached. See Suburban Util.
Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983).


DISCUSSION

 The administrative law judge ("ALJ") heard the testimony of the Williamses as well
as that of a witness called by Chrysler. The ALJ also participated in a test drive of the Neon. 
Although the transmission concern was not manifested during the test drive, the ALJ
acknowledged that the Williamses had indicated that the transmission problem was an intermittent
one and that it might not manifest itself during the test drive.


Quantum of Proof

 In points of error one and three, Chrysler contends that its dealer was afforded only
one attempt to repair the transmission problems before relief was ordered and that one attempt is
not sufficient to justify ordering relief under the lemon law. See Tex. Rev. Civ. Stat. Ann. art.
4413(36), § 6.07(c), (d). However, the ALJ, and thereafter TX DOT, found that the Neon was
taken to an authorized dealership with a transmission complaint on four separate occasions and
that these visits constituted a reasonable number of repair attempts. This finding is supported by
substantial evidence in the form of the Williamses' testimony.

 Substantial evidence must be more than a scintilla of evidence, but it need not be
a preponderance of evidence. See Charter Med., 665 S.W.2d at 452. As required by Sizemore,
the testimony given by the Williamses formed a reasonable basis for TX DOT's actions. See
Sizemore, 759 S.W.2d at 117. The ALJ could reasonably have found that the Williamses had met
the lemon law requirements from the testimony about the numerous times the Williamses took the
Neon to Crown Dodge for repair, the lemon law notice letter written to Crown Dodge and copied
to Chrysler, the appointments made by the Williamses in an attempt to have the car repaired in
September 1998, (2) and the ongoing transmission problems. The ALJ was entitled to rely on the
Williamses' testimony, (3) and this Court is not permitted to substitute its judgment as to the
credibility of the evidence. See Ford Motor Co., 936 S.W.2d at 429-30. Thus, we overrule
points of error one and three.


Reasonable Number of Repair Attempts

 Chrysler contends in its second point of error that it was not allowed a reasonable
number of attempts to repair the Neon before being ordered to repurchase the car. Chrysler
argues that four attempts are required to constitute a reasonable opportunity to repair. See Tex.
Rev. Civ. Stat. Ann. art. 4413(36), § 6.07(d). But again, the ALJ and TX DOT found that the
Neon was taken to an authorized dealership with a transmission complaint on four separate
occasions and that these visits afforded the dealership a reasonable number of repair attempts.

 Chrysler argues that to qualify as a "repair attempt" the vehicle must have been left
at the dealership for repair. Chrysler focuses on the ALJ's statement rejecting the August 4 visit
as a repair attempt: "[J]ust based on you--what you just told me of you [sic] brought it in, you
didn't have time to leave it, and you didn't leave it, I--I can't consider that to be a repair attempt
on that--that 8-4 of '98 visit . . . ." From this, Chrysler argues that the finding of the ALJ that
the visits on December 6 and 17 were repair attempts cannot stand because the Williamses did not
leave the Neon with the dealership on those days. However, Chrysler overlooks the fact that the
ALJ implicitly defined repair attempts to include those occasions when the fault for failing to
repair the vehicle rests with the dealership. 

 Under this analysis, only those occasions when failure to repair the vehicle was the
fault of the consumer would not be considered a repair attempt under the statute. The ALJ thus
found that fault lay with the Williamses for not having the Neon repaired on August 4, 1998
because they were unwilling to leave the vehicle with the dealer on that day. However, the visits
on December 6 and December 17 could be considered repair attempts because, in the view of the
ALJ, the excuses on those occasions, that the appropriate mechanic was not available and that
Crown Dodge was too busy and could not repair the car until after the holidays, constituted fault
on the part of Crown Dodge. 

 TX DOT adopted the ALJ's findings in rendering its order. We apply a deferential
standard of review and adopt TX DOT's construction of the statute as a reasonable interpretation
of the statute if it does not contradict the statute's plain meaning. See Nabisco, Inc. v. Rylander,
992 S.W.2d 678, 681-82 (Tex. App.--Austin 1999, pet. denied). Because under this construction
the Williamses did offer Chrysler four repair attempts, we need not decide whether fewer than
four repair attempts would be sufficient to justify ordering relief. We conclude that substantial
evidence exists upon which the ALJ could find that there were four repair attempts on the Neon. 
Accordingly, we overrule the second point of error.

Notice and Opportunity for Repair

 In its fourth and fifth points of error, Chrysler contends that the notice requirement
of the lemon law was not met in this case and that the Williamses failed to offer Chrysler
"reasonable" opportunities to repair. As discussed above, the record contains substantial evidence
upon which the ALJ could rely in finding that Chrysler had notice of the concerns and was given
sufficient opportunities to cure the problems. The Williamses sent a letter to Crown Dodge and
to Chrysler concerning the transmission and other problems, repeatedly took the Neon to Crown
Dodge for repair, and set up further appointments -- even after filing a lemon law complaint -- to
try to solve the problems. Although Chrysler argues that it did not receive the Williamses' lemon
law notice letter until January 29, Vicki Williams testified that she wrote the letter on January 3. 
Thus, the ALJ was free to find that Chrysler had notice before the January 12 repair attempt. The
ALJ was also entitled to find, as noted above, that repair opportunities were provided to Chrysler
in September 1998 and that, therefore, the notice and opportunity requirements of the lemon law
were satisfied. Because the ALJ's finding is supported by substantial evidence, we overrule points
of error four and five.


Repurchase Requirement

 In point of error six, Chrysler challenges the requirement that it repurchase the
Neon and contends that the Williamses should reimburse it for its monetary losses. The lemon
law specifically provides that the manufacturer may be required to repurchase a vehicle if the
vehicle does not or cannot be made to conform to an express warranty. See Tex. Rev. Civ. Stat.
Ann. art. 4413(36), § 6.07(c). Because there is substantial evidence in the record to support the
finding that the Williamses met the lemon law requirements, we find that the repurchase
requirement was an appropriate order with which Chrysler must comply. We overrule point of
error six.


CONCLUSION

 We overrule all of Chrysler's points of error and hold that substantial evidence in
this case supports TX DOT's order. We affirm the judgment of the district court.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed

Filed: June 22, 2000

Do Not Publish

1. Section 7.01(a) of the statute states that judicial review of TX DOT's decision shall be
under the substantial evidence rule and, to the extent not inconsistent, pursuant to the
Administrative Procedure Act (the "APA"). See Tex. Gov't Code Ann. §§ 2001.001-.902 (West
Supp. 2000).
2. Although Chrysler argues that these appointments cannot be considered offers to repair
because they were on days or times when the dealership was not open, there is testimony in the
record that not only did the Williamses offer to bring the Neon to the dealership any time after
5:00 p.m. on weekdays, when Crown Dodge was open until 7:00 p.m., but the Williamses also
offered to make the Neon available before 5:00 p.m. on at least one occasion.
3. The ALJ did rely on this testimony in his decision, finding the Williamses to be "totally
credible." 


n meaning. See Nabisco, Inc. v. Rylander,
992 S.W.2d 678, 681-82 (Tex. App.--Austin 1999, pet. denied). Because under this construction
the Williamses did offer Chrysler four repair attempts, we need not decide whether fewer than
four repair attempts would be sufficient to justify ordering relief. We conclude that substantial
evidence exists upon which the ALJ could find that there were four repair attempts on the Neon. 
Accordingly, we overrule the second point of error.