# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00528-CV

**Appellants, Texas General Land Office and Texas Commission on Environmental Quality//Cross-Appellant, Crystal Clear Water Supply Corporation**

**v.**

**Appellee, Crystal Clear Water Supply Corporation//Cross-Appellees, Texas General Land Office and Texas Commission on Environmental Quality**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-12-000305, HONORABLE TIM SULAK, JUDGE PRESIDING

## O P I N I O N

The Texas Commission on Environmental Quality (the Commission) granted the petition of the Texas General Land Office (the GLO) for expedited release of a portion of its property from the certificated service area of Crystal Clear Water Supply Corporation (Crystal Clear). *See* Tex. Water Code § 13.254(a-5) (providing for expedited release of property not receiving water or sewer service from certificate holder). In its suit for judicial review of the Commission's order, Crystal Clear contended that the Commission erred in granting the GLO's petition for decertification because the statutory requirements for expedited release pursuant to section 13.254(a-5) were not met. Specifically, Crystal Clear argued that the property the GLO sought to have decertified was in fact "receiving water service" from Crystal Clear and thus was not eligible for expedited release under section 13.254(a-5). Crystal Clear also asserted that the decertification petition should not

have been approved because the GLO excluded from its request for expedited release certain other tracts it owned within Crystal Clear's certificated area. In addition to its suit for judicial review, Crystal Clear sought declarations (1) regarding the proper statutory construction of certain provisions of the Water Code and related agency rules and (2) that the Commission's order violated its constitutional rights to due process and due course of law under the United States and Texas Constitutions. The Commission filed a plea to the jurisdiction challenging the district court's subject-matter jurisdiction over the requests for declaratory relief. After a hearing, the district court reversed the Commission's order granting the GLO's petition for decertification but granted the Commission's plea to the jurisdiction as to Crystal Clear's claims for declaratory judgment. In this appeal, the Commission and the GLO challenge the part of the district court's judgment that reversed the Commission's decertification order; by cross-appeal, Crystal Clear challenges the portion of the judgment that granted the Commission's plea to the jurisdiction. As to the merits of the decertification order, we will reverse that part of the district court's judgment and render judgment affirming the Commission's order. *See* Tex. Gov't Code § 2001.174(1). We will affirm the portion of the judgment that granted the Commission's plea to the jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Crystal Clear is a water-supply corporation regulated by the Commission. *See* Tex. Water Code § 13.001-.515 (establishing comprehensive regulatory system to regulate retail public utilities); .002(19) ("retail public utility" includes water-supply corporation operating, maintaining, or controlling facilities for providing potable water service for compensation). Crystal Clear holds a certificate of convenience and necessity (CCN) that authorizes it to be the exclusive water-service

2

provider within a specifically defined territory, which is referred to as its "certificated area." *See id.* § 13.244 (setting forth requirements for application for CCN). The GLO owned approximately 1,984 acres of land that was located within Crystal Clear's certificated area.[1] The GLO filed a petition with the Commission seeking to remove approximately 1,842 acres of that land (the Decertified Property) from Crystal Clear's certificated area pursuant to Water Code section 13.254(a-5). Section 13.254(a-5) provides that the owner of a tract of land that is 25 acres or larger and located in certain counties, including Comal County, may petition for, and is entitled to, expedited release of that tract from a certificated area if the tract is "not receiving water or sewer service." *Id.* § 13.254(a-5).[2] The 1,842 acres the GLO sought to decertify was composed of five contiguous tracts of land, each of which was greater than 25 acres in size. The GLO provided the Commission with deeds of conveyance that it represented corresponded to each of the separate tracts. Excluded from the request for expedited release were approximately 151 acres of the GLO's property, which consisted of five additional tracts (the Excluded Property)[3] that were adjacent to the Decertified Property.

---

[1] As we will discuss more fully below, the legislature has since removed 151.846 acres of the GLO's property from Crystal Clear's service area. *See* Tex. Spec. Dist. Code § 7206.001-.005 (dissolving Crystal Clear Water Supply Corporation, creating Crystal Clear Special Utility District, and defining Crystal Clear's initial district territory).

[2] A landowner may not seek expedited release of such a tract if it is located in "a platted subdivision actually receiving water service or sewer service." Tex. Water Code § 13.254(a-2).

[3] This is the acreage the legislature later removed from Crystal Clear's service area when it was converted from a water supply corporation to a special utility district. *See* Tex. Spec. Dist. Code § 7206.001-.005.

3

In its petition, the GLO stated that the Decertified Property was not receiving water or sewer service from Crystal Clear. The petition was supported by the affidavit of Hal Croft, Deputy Commissioner of the GLO's Asset Management Division, in which he averred that "[the Decertified Property] is not receiving water or sewer service from Crystal Clear Water Supply Corporation." In its brief in support of the petition, the GLO stated that there were "no active water meters or water connections on and no facilities providing current service to the [Decertified Property]." (All parties agree that the Decertified Property was not receiving *sewer* service from Crystal Clear.) According to the GLO, there was "one abandoned, empty meter box on the eastern portion of the property, which Crystal Clear itself classifies as inoperative."

Crystal Clear filed a response in opposition to the petition in which it asserted, first, that the GLO could not "selectively" carve out a portion of its property that had no active water connections—the Decertified Property—and then seek expedited release of that property. Rather, Crystal Clear contended that the ten contiguous tracts owned by the GLO should be considered as a single tract of approximately 2,000 acres and, by virtue of the existence of several active water connections on the tracts comprising the Excluded Property, the entire 2,000 acre tract should be considered to be "receiving water service" from Crystal Clear. Crystal Clear also argued that, even if it was proper for the GLO to seek expedited release of only the Decertified Property, sufficient facilities existed on and near the Decertified Property that it too was "receiving water service" and therefore could not qualify for expedited release under section 13.254(a-5).

The Commission concluded that the GLO had satisfied the criteria in section 13.254(a-5) and approved the request for expedited release of the Decertified Property from Crystal

4

Clear's certificated area. Crystal Clear's motion for rehearing was overruled by operation of law. Crystal Clear then filed a suit for judicial review in Travis County district court. In the district court, Crystal Clear again asserted that the GLO could not carve out a portion of its property for decertification and, in any event, that the Decertified Property was "receiving water service" from Crystal Clear. Crystal Clear alleged that it had "significant physical facilities, including water lines, connections, wells, plants, and other facilities, both located on, near and adjacent to the Decertified Property that are committed and/or used by Crystal Clear to provide water service." Crystal Clear also alleged that it had secured a diverse, long-term supply of water in order to serve its certificated area. Crystal Clear argued that when "a utility has 'facilities' in connection with certain property, it provides 'service' to that property." Crystal Clear also sought declaratory relief pursuant to the Uniform Declaratory Judgments Act (UDJA) and the Administrative Procedure Act (APA). *See* Tex. Civ. Prac. & Rem. Code § 37.009; Tex. Gov't Code § 2001.038. Specifically, Crystal Clear sought declarations confirming its proposed construction of certain sections of the Water Code and related administrative rules, as well as declarations that the Commission's approval of the GLO's petition violated its rights to due process under the United States Constitution and due course of law under the Texas Constitution. *See* U.S. Const. amends. V, IV; Tex. Const. art. I, § 19.

The Commission filed a plea to the jurisdiction in which it asserted that Crystal Clear's claims for declaratory judgment should be dismissed because (1) declaratory relief is not available to resolve issues already pending before the court in the same suit, and (2) the claims were barred by sovereign immunity. The GLO intervened in the case in support of the Commission.

5

Following a non-evidentiary hearing, the trial court rendered judgment granting the Commission's plea to the jurisdiction as to Crystal Clear's claims for declaratory relief but reversing the Commission's order approving the GLO's request for expedited release of the Decertified Property from Crystal Clear's certified area. The GLO and the Commission each perfected an appeal challenging the trial court's reversal of the Commission's order as to decertification, and Crystal Clear perfected a cross-appeal complaining that the trial court erred in granting the Commission's plea to the jurisdiction as to Crystal Clear's claims for declaratory relief.

### *Judicial Review of the Commission's Order Approving the GLO's Decertification Petition*

Section 13.381 of the Water Code provides that any party to a proceeding before the Commission is entitled to judicial review under the substantial-evidence rule. Tex. Water Code § 13.381. Section 13.002 defines "proceeding" to mean "any hearing, investigation, inquiry, or other fact-finding or decision-making procedure" under Water Code chapter 13. *Id.* § 13.002(16). Thus, we must review the Commission's decision in this case "through the prism of substantial evidence review." *Texas Water Comm'n v. Lakeshore Util. Co.*, 877 S.W.2d 814, 818 (Tex. App.—Austin 1994, writ denied). Under this standard, we may not, with respect to questions committed to the Commission's discretion, substitute our judgment for that of the Commission on the weight of the evidence. *See* APA § 2001.174. We must, however, reverse the Commission's decision if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed the Commission's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as

6

a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* § 2001.174(2).

An agency's decision is presumed to be valid, and it is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). The evidence in the record may preponderate against the agency's decision yet still provide a reasonable basis for the decision and thereby meet the substantial-evidence standard. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The question of whether an agency's decision is supported by substantial evidence is a question of law, and we owe no deference to the district court's decision. *See Firemen's & Policemen's Civ. Serv. v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). We review questions of statutory construction de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

The Commission's order recites its conclusion that the GLO "satisfied all criteria to be released from [Crystal Clear's] CCN" pursuant to section 13.254(a-5). Accordingly, the Commission impliedly found as matters of fact that the tracts comprising the Decertified Property were each at least 25 acres in size, were located in an eligible county, and were not "receiving water or sewer service." *See* Tex. Water Code § 13.254(a-5). The district court's judgment reversed the Commission's order. The issues raised by the Commission and the GLO in their appeals reduce to two principal disputes: (1) whether the Commission had the authority to decertify the acreage in the Decertified Property even though that property was composed of several different tracts of land and

7

even though the GLO owned other contiguous tracts of land in Crystal Clear's certificated area for which it did not seek decertification and which Crystal Clear asserts were "receiving water service" from Crystal Clear, and (2) whether the Commission correctly found that the GLO property was not "receiving water service" so as to be eligible for expedited decertification.

### *Was the GLO required to apply for decertification of all of its property located in Crystal Clear's certificated area?*

Crystal Clear argues on appeal, as it did before the Commission and the district court, that the Commission erred in approving the GLO's decertification petition because that petition did not seek decertification of *all* property owned by the GLO in Crystal Clear's certificated area. Specifically, Crystal Clear complains that the GLO did not seek decertification of the Excluded Property—approximately 151 acres consisting of five contiguous tracts adjacent to the Decertified Property. Crystal Clear asserts that the tracts comprising the 151 acres are clearly receiving water service and that if that acreage and the Decertified Property were treated as a single tract, none of the GLO's property would qualify for expedited decertification. We understand Crystal Clear's argument to be that by approving a petition that did not include a request to decertify both the Excluded Property and the Decertified Property, the Commission exceeded its statutory authority and thereby committed reversible error. *See* APA § 2001.174(2)(B).

Crystal Clear has not identified any statutory support for its position that the GLO could not seek expedited decertification of less than all of its property located within Crystal Clear's certificated area. Section 13.254(a-5) simply requires that the property sought to be decertified be a tract of land of at least 25 acres located in certain counties and that it not be "receiving water

8

service." Tex. Water Code § 13.254(a-5). Each of the five tracts making up the Decertified Property was of the required size and located in an eligible county, and the Commission necessarily found that none of the tracts was receiving water service.

Crystal Clear does not argue that a request for expedited decertification of multiple tracts of land could not be combined in one petition. Rather, Crystal Clear maintains that because the Decertified Property was adjacent to the 151 acres excluded from the decertification petition and because in other contexts the GLO referred to its property as a "2,000-acre tract," the exclusion of the 151 acres from the decertification petition amounted to impermissible "gerrymandering" that deprived the Commission of authority to approve the petition. We conclude, however, that section 13.254(a-5) does not contain an "all or nothing" requirement. Accordingly, the Commission's order was not erroneous merely because it decertified less than all of the GLO's property within Crystal Clear's certified area.

In any event, as previously noted, the 151 acres that made up the Excluded Property has now been removed by statute from Crystal Clear's certified area. *See* Tex. Spec. Dist. Code § 7206.001-.005 (dissolving Crystal Clear Water Supply Corporation, creating Crystal Clear Special Utility District, and defining Crystal Clear's initial district territory). Were this Court to accept Crystal Clear's argument and reverse the Commission's order approving the decertification petition for that reason, there would be no practical legal effect. Even if the Excluded Property should originally have been included in the decertification petition and would, at that time, have served as an impediment to the Commission's approval of the petition, that theoretical impediment no longer exists because that property has been statutorily removed from Crystal Clear's certified area. An

9

issue becomes moot when a party seeks a ruling on some matter that, when rendered, would not have any practical effect on a then-existing controversy. *See Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied); *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846-47 (Tex. App.—Austin 2002, pet. denied). Because a ruling on Crystal Clear's "gerrymandering" argument would have no practical legal effect on the question of whether the Commission would approve or deny the decertification petition if the cause were remanded, that issue is moot.[4]

### Was the Decertified Property "receiving water service"?

Section 13.002 of the Water Code defines "service" as:

> any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to its patrons, employees, other retail public utilities, and the public, as well as the interchange of facilities between two or more retail public utilities.

Tex. Water Code § 13.002(21). Thus, the term "service" is of intentionally broad scope and encompasses an array of activities that a retail public utility might engage in as part of its mission of "providing potable water service or sewer service, or both, for compensation." *See id.* 13.002(19) (defining "retail public utility"). The question before the Commission in the present case, however,

---

[4] Were this Court to conclude that the Commission's order was erroneous due to alleged "gerrymandering," its only option would be to reverse and remand the cause for further proceedings. *See* Tex. Gov't Code § 2001.174. Any judgment by this Court that would have the effect of usurping the Commission's discretion would violate the separation-of-powers doctrine of the Texas Constitution and would be void. *See Sierra Club v. Texas Natural Res. Conservation Comm'n*, 26 S.W.3d 684, 688 (Tex. App.—Austin 2000), *aff'd*, 70 S.W.3d 809 (Tex. 2002); *Texas Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied).

10

was not whether Crystal Clear was *providing* water service to customers within its certificated area—or even to some property owned by the GLO—but whether the Decertified Property was *receiving* water service from Crystal Clear. If it was not, then the property qualified for expedited decertification under section 13.254(a-5). The Commission determined that the Decertified Property was not "receiving" such "service" from Crystal Clear, i.e., that there were no water facilities or lines committed to serving the Decertified Property and that Crystal Clear had not performed any act or supplied anything to the Decertified Property related to providing water to that property. We review the Commission's order under the substantial-evidence standard of review, which is a rational-basis test to determine whether an agency's order finds reasonable support in the record. *See Texas Health Facilities Comm'n*, 665 S.W.2d at 452-53.[5]

As stated above, the GLO attached to its petition for decertification the affidavit of Hal Croft, who averred that "[the Decertified Property] is not receiving water or sewer service from Crystal Clear Water Supply Corporation." In its brief in support of the petition, the GLO argued that there were no active water meters or water connections on, and no facilities providing water to, the Decertified Property. According to the GLO, there was "one abandoned, empty meter box on the eastern portion of the property, which Crystal Clear itself designates as inoperative."

---

[5] Crystal Clear argues that, because there was no contested-case hearing, substantial-evidence review is inapplicable and we should instead resolve any disputed fact issues by taking as true all evidence favorable to Crystal Clear's position that it was providing water service to the Decertified Property and resolve any doubts in favor of that position. But the Water Code provisions specific to this decertification proceeding mandate that we review the Commission's decision under the substantial-evidence standard. *See* Tex. Water Code § 13.381 ("Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule.").

11

In its response in opposition to the request for expedited decertification, Crystal Clear asserted that it in fact had "significant physical facilities" located on the Decertified Property and also had facilities located near that property that were "committed or used by Crystal Clear in the performance of its duties and obligations as a retail public utility" to serve the Decertified Property. In support of this contention, Crystal Clear proffered evidence to the Commission, including the affidavit of Eric Schulze, a professional engineer.[6] The contents of that affidavit can be summarized as follows:

> **Facilities**: Schulze's affidavit proves up an attachment labeled "Exhibit 1," which is a map prepared by him on December 6, 2011. The map depicts a plant labeled "Kuenstler Plant" and something identified as a "Standpipe" on the portion of the Excluded Property adjoining the southern border of the Decertified Property. According to this map, a 3" water line runs along the western edge of two of the parcels making up a portion of the Decertified Property on the east side of IH-35. Located on that water line is something marked with the letter "Y" and described in the map's legend as "Inactive Connection by GLO." It also appears from the map that an unidentified 4" water line enters the north piece of the portion of the Decertified Property that is located on the west side of IH-35.

> **Water Supply**: Schulze also averred that Crystal Clear had secured water rights committed to serve the Decertified Property, referring to an attachment that "identifies the water rights Crystal Clear has secured."

---

[6] We note that in the administrative record as admitted in the trial court, Crystal Clear's response to the GLO's petition for expedited release does not have any attachments and does not include the referenced Schulze affidavit. Crystal Clear's motion to overturn the Commission's order on the petition does include a copy of an affidavit of Eric Schulze, which we have presumed to be the one referred to in Crystal Clear's response. This is the only affidavit of Eric Schulze appearing in the administrative record.

12

In reviewing the attachment to the Schulze affidavit, it is not apparent whether the water rights referred to are rights Crystal Clear had secured for its *entire certificated area* or whether the referenced water rights were dedicated to or reserved to serve anticipated future development *on the Decertified Property*. Moreover, while the attachment appears to show that the secured water supply meets Crystal Clear's "projected water demand," there is nothing to show that that projected demand includes demand anticipated from proposed development of the Decertified Property.

Crystal Clear also informed the Commission that the GLO is a "very substantial" landowner along the IH-35 corridor and represented that Crystal Clear had secured a "diverse, long-term supply of water for its [certificated area] in the high-growth area of IH-35" and had done so both by purchasing water rights and by entering into long-term contracts for water supply. In support of this contention, Crystal Clear attached the affidavit of Michael Fournier, an administrator for Crystal Clear.[7] The contents of his affidavit can be summarized as follows:

> ***Water Supply***: Fournier averred that Crystal Clear had "purchased and made long-term contractual commitments to provide water supply to its [certificated area]," had a twenty-year supply of water, and had secured water rights "well in excess of the Commission's minimum requirements." As evidentiary support for this statement, Fournier referred to the attachment to Schulze's affidavit and to the fact that Crystal Clear had been certified as an approved water supplier in Comal County, where the Decertified Property was located. Fournier stated in his affidavit that, to achieve such certification, Crystal Clear had to satisfy Comal County's requirement that it demonstrate it had ownership of—or a firm contractual commitment

---

[7]     Again, Fournier's affidavit was not attached to Crystal Clear's response in the administrative record as admitted in the trial court. Crystal Clear's motion to overturn the Commission's order on the petition does include a copy of an affidavit of Michael Fournier, which we have presumed to be the one referred to in Crystal Clear's response. This is the only affidavit of Michael Fournier appearing in the administrative record.

13

> for—twenty years' available water supply for projected demand in the utility's service area.

Although he does not so state, it appears that Fournier was referring to the fact that the Comal County Commissioner's Court had approved Crystal Clear's "Water Availability Report." That report addressed Crystal Clear's ability to provide water to meet anticipated *general* demand in its certified area. The minutes of the Comal County Commissioner's Court meeting in which it considered the Water Availability Report indicate that there was a discussion at the meeting regarding whether the report included the projected demand for water arising out of the GLO's proposed plan of development of its property in Comal County, including the Decertified Property, that it had previously provided to Crystal Clear. Paul Terrill, a Crystal Clear representative, stated to the Commissioner's Court that the Water Availability Report did *not* include the GLO's projected demand for water because (1) that information was provided to Crystal Clear after it had prepared its report, (2) the GLO had not submitted an application for water service for the Decertified Property, and (3) the demand the GLO had projected was excessive.

The GLO countered Crystal Clear's evidence by presenting the affidavit of Clint Walker, a professional engineer, who averred that he had read Crystal Clear's Water Availability Report and that it did not include "any water supply or facilities to serve the Decertified Property." With respect to the water rights referred to in Schulze's affidavit, Walker stated that the Decertified Property, when developed, would need 3,024 acre-feet of water per year, yet Crystal Clear's total current supply is only 3,554 acre-feet per year for its entire certified area. Significantly, Walker

14

averred that 1,823 acre-feet per year of Crystal Clear's "water current supply is committed to its existing customers."

On appeal, the Commission and the GLO contend that Crystal Clear's admission that it was not then delivering any water to the Decertified Property ends the inquiry into whether that property is "receiving water service." In their view, a tract of land is not receiving water service "if the landowner is not receiving actual water on the property." We find nothing in the text of the statute, however, that compels this interpretation. The Commission and the GLO express concern that if "receiving water service" does not mean actual present delivery of water to a tract, expedited release pursuant to section 13.254(a-5) would not be available if the retail public utility had placed any type of facilities or lines anywhere near the tract seeking decertification, even if those lines were providing water to third parties and never delivered water to the tract at issue. We think these concerns are exaggerated. The mere existence of water lines or facilities on or near a tract would not necessarily mean that tract was "receiving water service." Rather, as discussed previously, such a determination is essentially a fact-based inquiry requiring the Commission to consider whether the retail public utility has facilities or lines committed to providing water *to the particular tract* or has performed acts or supplied anything *to the particular tract* in furtherance of its obligation to provide water to that tract pursuant to its CCN. As noted above, the term "service" as defined in chapter 13 is very broad and appears intentionally so. It includes facilities and lines as well as acts performed and anything furnished or supplied. But its breadth is also constrained by limitations in the definition itself, as well as in Water Code section 13.254(a-5). The definition of "service" includes the condition that the facilities or lines be "committed or used" in the performance of Crystal Clear's

15

duties as a retail public utility. Tex. Water Code § 13.002(21). The acts performed and things furnished or supplied must also be in furtherance of performing those duties. *Id.* And it is essential that any qualifying services are being "received" by the property for which expedited decertification is sought before such property is rendered ineligible for decertification pursuant to section 13.254(a-5). *Id.* § 13.254(a-5). A tract of land is not necessarily "receiving" water service simply because there are facilities or water lines near, or even on that tract if, for example, such facilities are used to provide water only to other tracts. Rather, it is important to consider whether the facilities and lines are "committed" to the tract seeking expedited release or "used" to provide water to that tract. Certainly an active water tap on the Decertified Property would constitute a facility or line "used" to supply water to the tract on which it was located. But it might also be sufficient if there were facilities or lines "committed" to such service, such as a dedicated water line that had been installed to serve that property even if such line were not currently operative. Conversely, a tract of land would not necessarily be "receiving" water service simply because the retail pubic utility has performed an act, such as entering into a contract to secure water supply, unless the act was performed in furtherance of providing water to the tract seeking decertification. The Commission and the GLO argue that applying section 13.002(21)'s broad definition of "service" to the phrase "receiving water service" in section 13.254(a-5) would eviscerate the statute's purpose of providing a streamlined decertification process for certain tracts of land and would render it impossible to obtain expedited decertification if the retail public utility has placed facilities or lines near the tract, even if they are serving only third parties. The requirement that the facilities and lines are used for or committed to a particular tract before that tract is deemed to be "receiving" services ameliorates

16

this concern. All of these considerations are matters committed to the Commission's sound discretion and authority to decide issues of fact.

The parties agree that Crystal Clear was not actively supplying water to the Decertified Property when the Commission issued its decertification order. Therefore, the issue before the Commission was whether the Decertified Property was "receiving water service" from Crystal Clear in some manner other than by present delivery of water to that property. The Commission impliedly found that there were no facilities or lines committed to serving the Decertified Property and/or that the water supply dedicated to meeting future demand by the Decertified Property was not sufficient for it to be deemed to be "receiving water service." In this suit for judicial review, we consider whether the evidence presented in the decertification proceeding provided reasonable factual support for the Commission's determination that Crystal Clear has not performed acts in furtherance of providing water to the Decertified Property, and does not have facilities and lines committed to that purpose, sufficient for it to be found to be "receiving water service." *See Sizemore*, 759 S.W.2d at 116.

Crystal Clear argues on appeal that there was evidence, presented as Exhibit H to its response to the decertification petition, that Crystal Clear has water lines, water plants, and other facilities located on the Decertified Property. Exhibit H, however, is simply a map that was attached to Crystal Clear's response to the GLO's petition for decertification. The map was not supported or proved up by any affidavit and does not bear the stamp of a licensed professional engineer. It was included in the response to support the uncontroversial proposition that the GLO's property, both the Decertified Property and the Excluded Property, is located in the heart of Crystal Clear's

17

certificated area. Exhibit H differs in material ways from the map of the same area attached to Schulze's affidavit that does bear his stamp as a licensed professional engineer (the "Schulze Map"). For example, the Schulze Map shows the "Kuenstler Plant" and the "Standpipe" as located on property *adjacent* to the Decertified Property, whereas Exhibit H appears to show that these two plants are located *on* the Decertified Property. Crystal Clear argues on appeal that Exhibit H reveals the existence of a water connection located *on* the Decertified Property that was "deactivated upon request"—implying, though not actually representing, that the GLO was the requestor. On Exhibit H is a spot marked "Y," which is located on the 3" water line that runs along the western boundary of the portion of the Decertified Property east of IH-35. Exhibit H's legend indicates that "Y" represents a "Surrendered Connection by GLO." The Schulze Map's legend indicates, however, that "Y" represents an "Inactive Connection by GLO." There was no further evidence presented regarding what "Y" depicts, nor what "Inactive Connection by GLO" means. We can infer only that "Y" corresponds to what the GLO referred to as an "empty meter box" located on the 3" water line. We conclude that the Commission could reasonably have declined to attribute any evidentiary weight to Exhibit H, any significance to the spot marked "Y," or any particular meaning to the descriptors of that spot included in the two maps' legends.

Crystal Clear also contends that there was evidence that it has water rights and water-supply contracts committed and used to "serve the area that includes" the Decertified Property. But as detailed above, there was at least conflicting evidence regarding whether the water supply contracts were secured in order to provide water to the Decertified Property, and Crystal Clear's own representative stated to the Comal County Commissioner's Court that the demand figures in its

Water Availability Report did not reflect the projected demand for water resulting from the GLO's proposed development of the Decertified Property.

We conclude that the evidence presented to the Commission regarding Crystal Clear's then-existing facilities and lines and water supply contracts provided a reasonable basis for the Commission's finding that the Decertified Property was not "receiving water service." Substantial evidence supports the Commission's finding that Crystal Clear had not performed any act, furnished or supplied any thing, or committed or used any facilities or lines *to the Decertified Property*. Because there was substantial evidence to support the Commission's finding that the Decertified Property was not receiving water service, the three criteria for expedited decertification pursuant to 13.254(a-5) were met. We therefore hold that the trial court erred in reversing the Commission's order approving the GLO's decertification petition.

### Appeal from District Court's Order Granting the Plea to the Jurisdiction

In addition to its suit for judicial review of the Commission's order, Crystal Clear asserted claims for declaratory judgment under both the UDJA and the APA. *See* Tex. Civ. Prac. & Rem. Code § 37.004; Tex. Gov't Code § 2001.038. The Commission filed a plea to the jurisdiction asserting that the district court lacked subject-matter jurisdiction over Crystal Clear's requests for declaratory relief because (1) declaratory judgment was not available to resolve issues already pending before the court and (2) sovereign immunity barred the claims. The district court granted the plea to the jurisdiction. In its cross-appeal, Crystal Clear brings a single issue asserting

that the trial court erred by granting the Commission's plea to the jurisdiction and dismissing its claims for declaratory relief brought pursuant to the UDJA.[8]

A plea to the jurisdiction challenges a trial court's authority to decide a case. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.*

To establish a trial court's subject-matter jurisdiction over a request for declaratory relief under the UDJA, a party must plead the existence of an "underlying controversy" within the scope of section 37.004 of the Civil Practice and Remedies Code. *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied). The power of courts to issue declaratory judgments under the UDJA in the face of administrative proceedings is limited. *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.—Austin 2002, no pet.). When a statute provides an avenue for attacking a final agency order, a declaratory-judgment action directed at that order will not lie. *Id.*; *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied). This is so because a party is generally not entitled to redundant remedies. *See Young Chevrolet*, 974 S.W.2d at 911.

Crystal Clear sought the following declarations related to expedited release pursuant to section 13.254(a-5):

---

[8] Crystal Clear does not challenge the district court's dismissal of its request for declaratory relief pursuant to section 2001.038 of the APA.

20

- If a utility has "facilities," as defined in 30 Tex. Admin. Code § 291.3(17), committed or used in connection with property, it provides "service" to that property, as defined by 30 Tex. Admin. Code § 291.3(43).

- "Service" as used in Tex. Water Code § 13.254(a-5) means "service" as defined in Tex. Water Code § 13.002(21).

- [The Commission], acting by and through its Executive Director and Commissioners, is bound by its formal interpretations of the Texas Water Code, and [the Commission's] Executive Director and Commissioners commit an *ultra vires* act that contravenes both the Texas Water Code and [the Commission's own] interpretation of the Texas Water Code by failing to apply the definition of "service" in Texas Water Code § 13.002(21) to a petition for expedited release under 30 Tex. Admin. Code § 291.113(r) and Texas Water Code § 13.254(a-5).

- [The Commission], acting by and through its Executive Director and Commissioners, exceeds its statutory authority and acts without legal authority when it grants a petition for expedited release under Tex. Water Code § 13.254(a-5) for a portion of a tract of land held under unity of ownership that was carved out and selectively included by the owner in a petition for expedited release, where the owner of the tract of land is receiving "service" as defined in Tex. Water Code § 13.002(21).

These declaratory claims repeat the same statutory-construction arguments Crystal Clear made to the Commission and to the district court in its suit for judicial review. An available remedy in its suit for judicial review was the reversal of the Commission's order if it was "in excess of the agency's statutory authority" or "affected by other error of law." APA § 2001.174. Thus, the district court was authorized to reverse the Commission's order if it concluded that the agency either exceeded its statutory authority or misconstrued a pertinent statute. Indeed, the district court did reverse the Commission's order. The declarations Crystal Clear sought would have provided no additional relief and were, therefore, redundant of its suit for judicial review. Accordingly, the district court did not

21

err in dismissing these claims for declaratory relief for lack of subject-matter jurisdiction pursuant to the redundant-remedies doctrine. *See SWEPI LP v. Railroad Comm'n*, 314 S.W.3d 253, 269 (Tex. App.—Austin 2010, pet. denied).

Crystal Clear argues on appeal that the district court's decision regarding the merits of its suit for judicial review would not necessarily have, and did not, provide it with "any clarity as to key aspects of the interpretation and application of" Water Code section 13.254(a-5). We understand Crystal Clear's argument to be that the declaratory relief it sought was broader than the relief it could obtain through resolution of its suit for judicial review and therefore was a permitted request to determine the proper construction of a statute that affects its business activities and to obtain a declaration of its rights, status, and legal obligations with respect to its duty to provide "continuous and adequate service" to the remainder of its certificated area. But the declarations Crystal Clear sought would not have provided it with any further clarity regarding the interpretation or application of section 13.254(a-5) in future decertification proceedings. As discussed previously, the determination of whether a particular property is "receiving water service" is a fact question or a mixed question of law and fact to be determined by the Commission based on the evidence before it. To the extent Crystal Clear sought a generic declaration of what would constitute sufficient facilities and lines "committed" to a tract to defeat a request for expedited decertification pursuant to section 13.254(a-5), any such declaration would have been purely advisory. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444 (separation-of-powers doctrine prohibits courts from issuing advisory opinions). Therefore, the trial court did not err in dismissing Crystal Clear's request for declaratory relief regarding the conditions necessary for expedited release pursuant to section 13.254(a-5).

22

Finally, Crystal Clear also sought declarations that the United States and Texas Constitutions require the Commission to afford the holder of a CCN due process and due course of law and that the Commission's order granting the petition to decertify part of Crystal Clear's certificated service area without an evidentiary hearing deprived it of those due-process rights. *See* U.S. Const. amend. V, XIV; Tex. Const. art. I, § 19. The Commission argued that these requests for declarations were barred by sovereign immunity, and the district court dismissed them for lack of subject-matter jurisdiction. Citing *City of El Paso v. Heinrich*, Crystal Clear argues on appeal that a legislative waiver exists that permits declaratory claims regarding its constitutional due-process rights. *See* 284 S.W.3d 366, 372 (Tex. 2009) ("[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to the effect compels the payment of money."). Crystal Clear also contends that its declaratory claims that sought to require state officials to comply with constitutional provisions fall within the *ultra vires* exception to sovereign immunity. *See, e.g.*, *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority."). Thus, Crystal Clear argues that the district court had subject-matter jurisdiction over its request for a declaration that its due-process rights were violated when the Commission decertified part of its certificated area without providing an evidentiary hearing.

The linchpin of Crystal Clear's argument is the existence of a vested property interest entitled to due-process and due-course-of-law protection. We look to Crystal Clear's pleadings to determine whether it has pleaded the existence of such an interest. *See Miranda*, 133 S.W.3d at 226.

23

Crystal Clear's petition identifies the qualifying property interest as "tangible property, such as facilities, located on" the Decertified Property and "the exclusive right and responsibility to provide water within defined geographic boundaries" as provided by its CCN. As an initial matter, the decertification order had no effect on Crystal Clear's title to any of its property or facilities, whether located on the Decertified Property or elsewhere. In any event, the Water Code provides that there be compensation for any property that the Commission determines is rendered useless or valueless to a decertified retail public utility as a result of decertification. *See* Tex. Water Code § 13.254(d)-(g). Moreover, it is undisputed that Crystal Clear was not generating any type of revenue stream as a result of the inclusion of the Decertified Property in its certificated area. The effect of the Commission's order was simply to remove the Decertified Property from Crystal Clear's certificated area, meaning that Crystal Clear no longer had a right to be the exclusive provider of water to that property. But this Court has previously held that a CCN, which confers the exclusive right to serve a designated area, is not a vested property right entitled to due-process protection. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 525-26 (Tex. App.—Austin 2010, no pet.).

We therefore conclude that Crystal Clear did not plead the existence of a vested property interest that could form the basis of a request for a declaration that the Commission's order violated its rights to due process or due course of law under the United States or Texas Constitutions. Thus, the district court did not err in dismissing Crystal Clear's declaratory claims to that effect for lack of subject-matter jurisdiction. Accordingly, we overrule Crystal Clear's sole issue in its cross-appeal.

**CONCLUSION**

Having concluded that substantial evidence supports the Commission's finding that the Decertified Property met the criteria for expedited release pursuant to Water Code section 13.254(a-5), we reverse the portion of the district court's judgment that reversed the Commission's order approving the GLO's petition for expedited release, and we render judgment affirming the Commission's order. We affirm the portion of the district court's order that granted the Commission's plea to the jurisdiction as to Crystal Clear's claims for declaratory relief.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed in Part, Reversed and Rendered in Part

Filed: August 22, 2014