# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00796-CV

**Mountain Peak Special Utility District, Appellant**

**v.**

**Public Utility Commission of Texas and The City of Midlothian, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-15-002843, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

The Public Utility Commission of Texas (the Commission) granted the petition of the City of Midlothian (the City) for expedited release of a portion of property it owned from the certificated service area of Mountain Peak Special Utility District (Mountain Peak). *See* Tex. Water Code § 13.254(a-5) (providing for expedited release of property not receiving water or sewer service from certificate holder). In its suit for judicial review of the Commission's order, Mountain Peak contended that the Commission erred in granting the City's petition for decertification because the statutory requirements for expedited release pursuant to section 13.254(a-5) were not met. Specifically, Mountain Peak argued that the property the City sought to have decertified was in fact "receiving water service" from Mountain Peak and thus was not eligible for expedited release under section 13.254(a-5). Mountain Peak also asserted that the decertification petition should not have been approved because the City excluded from its request for expedited release a 6.7-acre piece of

property that it owned within Mountain Peak's certificated service area. In addition, Mountain Peak asserted that the Commission's approval of the petition for decertification should be set aside because federal law preempted the decertification of any of Mountain Peak's certificated service area. After a hearing, the district court affirmed the Commission's order granting the City's petition for decertification. We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Mountain Peak is a conservation and reclamation district operating as a special utility district created under Article XVI, Section 59, of the Texas Constitution and regulated by the Commission. *See* Tex. Const. art. XVI, § 59; Act of May 13, 2013, 83d Leg., R.S., ch. 170, § 2.96, 2013 Tex. Gen. Laws 725, 769 (transferring to Public Utility Commission powers, duties, functions, programs, and activities of Texas Commission on Environmental Quality relating to economic regulation of water and sewer service); *see also* Tex. Water Code §§ 13.002-.515 (establishing comprehensive regulatory system to regulate retail public utilities), .002(19) ("retail public utility" includes political subdivision operating, maintaining, or controlling facilities for providing potable water service for compensation). Mountain Peak holds a certificate of convenience and necessity (CCN) that authorizes it to be the exclusive water-service provider within a specifically defined territory, which is referred to as its "certificated area." *See* Tex. Water Code § 13.244 (setting forth requirements for application for CCN).

The City owns approximately 104 acres of land in Ellis County that was located within Mountain Peak's certificated area. The City filed a petition with the Commission seeking to remove the 104 acres from Mountain Peak's certificated area pursuant to Texas Water Code section

13.254(a-5). Section 13.254(a-5) provides that the owner of a tract of land that is 25 acres or larger and located in certain counties, including Ellis County, may petition for, and is entitled to, expedited release of that tract from a certified area if the tract is "not receiving water service." *Id.* § 13.254(a-5).[1] In its petition, the City stated that the 104-acre property was not receiving water or sewer service from Mountain Peak. The petition was supported by the affidavit of Michael G. Adams, the City's Executive Director of Engineering and Utilities, in which he averred that the 104-acre property "currently is not receiving potable water service, or water of any type from [Mountain Peak]," that the City "has not requested water service from Mountain Peak," and "[i]f Mountain Peak has any water facilities near or adjacent to the [104-acre property], those facilities were installed and are used to provide water service to property other than the [104-acre property]."

Mountain Peak filed a motion to intervene and opposed the petition. Mountain Peak asserted that the petition seeking decertification of a part of Mountain Peak's certificated area was in conflict with a contractual commitment between the City and Mountain Peak that had been approved by the Commission's predecessor agency, the Texas Natural Resources Conservation Commission (TNRCC), in 1997. Mountain Peak also asserted that the 104-acre property was "receiving water service" from Mountain Peak because there was a sewer lift station owned and operated by Mountain Peak located on the north part of the property. According to Mountain Peak, there was a two-inch water line running 200 to 300 yards from a connection to a 12-inch water main

---

[1] A landowner may not seek expedited release of such a tract if it is located (1) within the boundaries of any municipality or the extraterritorial jurisdiction of a municipality with a population of more than 500,000 and the municipality or retail public utility owned by the municipality is the holder of the CCN or (2) in a platted subdivision "actually receiving water or sewer service." *See* Tex. Water Code § 13.254(a-2).

3

owned and operated by Mountain Peak and terminating inside a meter box with an angle-stop valve on the 104-acre property next to the lift station. Mountain Peak stated that the two-inch water line supplied water from Mountain Peak's public water system to the City for use at the lift station such that the 104-acre property was "receiving water service" from Mountain Peak. Finally, Mountain Peak asserted that the City's petition was not administratively complete because it did not include "evidence that <u>the owner of the tract</u> of land in question—the City of Midlothian—authorized and approved" the petition.[2]

The Commission's Staff reviewed the petition and Mountain Peak's response and recommended that Mountain Peak's petition be deemed deficient until the City provided proof that (1) the request did not seek to violate currently applicable contract terms, and (2) the City did not seek approval of an application that would violate Texas Water Code section 13.254(a-5). The Commission then issued an order directing the City to amend its application to cure the deficiencies identified by the Commission's Staff. The City filed its response arguing that Mountain Peak's bare allegations of a contractual impediment to the decertification request did not render its petition administratively incomplete. Additionally, while maintaining its position that the existence of an unmetered water line to the lift station did not cause the 104-acre property to be "receiving water service" such that it was disqualified from expedited decertification pursuant to section 13.254(a-5), in order to eliminate any question in that regard, the City amended its petition to seek decertification

---

[2] The petition was filed by the President of Harkins Engineering, Inc.

4

of only 97.3 acres (the Park Property) of the 104 acres described in its original application. The amendment excluded 6.7 acres of property on which the lift station was located.[3]

Mountain Peak continued to object to the decertification petition and added a complaint that the City was not authorized to amend its petition to seek decertification of property different from that described in its original petition, and that it could not "arbitrarily" exclude part of its property from the area it sought to remove from Mountain Peak's certificated area. Mountain Peak also argued that, even if it was proper for the City to seek expedited release of only the Park Property, sufficient water lines, facilities, and water supplies existed on or near the Park Property such that it, too, was "receiving water service" and therefore could not qualify for expedited release under section 13.254(a-5). The administrative record includes additional briefing and evidence in the form of affidavits and exhibits filed by both the City and Mountain Peak relevant to the disputed issues.

The Commission concluded that the City had satisfied the criteria for expedited decertification as set forth in Texas Water Code section 13.254(a-5) and approved the request for expedited release of the Park Property from Mountain Peak's certificated area. Mountain Peak's motion for rehearing was overruled by operation of law. Mountain Peak then filed a suit for judicial review in Travis County district court.

---

[3] Attached to the City's filing is a second affidavit of Michael Adams in which he avers:

City records confirm that the northernmost approximately 6.7 acres of the [104-acre property] that includes this lift station was included as part of a 2006 final plat of Phase 2A of the Lawson Farms subdivision (the "Phase 2A Park Property"). [] The sewer lift station, required under an earlier final plat (Plat One), was constructed at developer expense and was accepted by [the City] in 2006 as part of the Phase One improvements for the Lawson Farms subdivision. [] Under [the City's] then existing subdivision regulations, the developer was required to install a water line to the lift station, which might be installed later, or "phased-in."

5

In the district court, Mountain Peak again asserted that the City could not carve out the 6.7-acre portion of its property from the property for which it sought decertification and, in any event, that the Park Property was "receiving water service" from Mountain Peak. Mountain Peak also continued to maintain that removal of the Park Property from its certificated area was in conflict with the 1997 TNRCC order that, according to Mountain Peak, approved and incorporated an agreement between Mountain Peak and the City to refrain from seeking to alter or amend one another's CCNs or interfere with the boundaries of their respective CCNs. Mountain Peak also argued that federal law preempted the removal of any property from its certificated area. Specifically, Mountain Peak asserted that federal law protects the service area of entities like Mountain Peak that have outstanding debt to the federal government for loans obtained through a federal program designed to assist the development of water distribution and sewer service facilities in rural areas. *See* 7 U.S.C. § 1926 (establishing loan program through United States Department of Agriculture to aid designated associations in developing and operating water distribution and sewer service facilities in rural areas). The Commission filed a general denial of Mountain Peak's claims, and the City intervened in support of the Commission.

Following a hearing, the trial court rendered judgment affirming the Commission's order approving the City's request for expedited release of the Park Property from Mountain Peak's certificated area. Mountain Peak then perfected this appeal.

***Standard of Review***

Section 13.381 of the Texas Water Code provides that any party to a proceeding before the Commission is entitled to judicial review under the substantial-evidence rule. *See* Tex.

6

Water Code § 13.381. Section 13.002 defines "proceeding" to mean "any hearing, investigation, inquiry, or other fact-finding or decision-making procedure" under Texas Water Code chapter 13. *Id.* § 13.002(16). Thus, we must review the Commission's decision in this case "through the prism of substantial evidence review." *Texas Gen. Land Office v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130, 135 (Tex. App.—Austin 2014, pet. denied) (quoting *Texas Water Comm'n v. Lakeshore Util. Co.*, 877 S.W.2d 814, 818 (Tex. App.—Austin 1994, writ denied)). Under this standard, we may not, with respect to questions committed to the Commission's discretion, substitute our judgment for that of the Commission on the weight of the evidence. *See* Tex. Gov't Code § 2001.174. We must, however, reverse the Commission's decision if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed the Commission's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* § 2001.174(2).

An agency's decision is presumed to be valid, and it is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). The evidence in the record may preponderate against the agency's decision yet still provide a reasonable basis for the decision and thereby meet the substantial-evidence standard. *Texas Health Facilities Comm'n v. Charter*

*Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The question of whether an agency's decision is supported by substantial evidence is a question of law, and we owe no deference to the district court's decision. *See Firemen's & Policemen's Civ. Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). We review questions of statutory construction de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

***Did the Commission err by permitting the City to amend its petition to seek expedited release of the Park Property and not of the 6.7 acres?***

Mountain Peak asserts that the Commission erred by permitting the City to file an amended decertification petition that removed 6.7 acres from the area for which it sought expedited release. According to Mountain Peak, because the 6.7 acres was not a "separately deeded and acquired tract," it could not be omitted from the acreage for which decertification was requested, and the Commission's decertification order was therefore erroneous.[4] Mountain Peak has not identified any statutory support for its position that the City could not exclude the 6.7 acres from the property for which it sought expedited release from Mountain Peak's certificated service area. Section 13.254(a-5) requires only that the property sought to be decertified be a tract of land of at least 25 acres located in certain counties and that it not be "receiving water service." *See* Tex. Water Code § 13.254(a-5). The Park Property was of the required size and located in an eligible county, and the Commission found that it was not receiving water service. As this Court has previously concluded, section 13.254(a-5) does not have an "all or nothing" requirement that prevents a

---

[4] Mountain Peak does not specifically identify how such error could be the basis for reversal of the Commission's order in this suit for judicial review, but we note that it could conceivably fall under the heading of "exceeding the Commission's statutory authority" or "affected by other error of law." *See* Tex. Gov't Code § 2001.174(2)(B), (D).

8

landowner from choosing to seek expedited release of some, but not all, of its property located in a certificated service area. *See Crystal Clear Water Supply Corp.*, 449 S.W.3d at 136.

Mountain Peak argues that permitting a landowner to seek decertification of some, but not all, of its property in a certificated service area could cause landowners to "simply draw circles around [multiple service] connections, carve them out, and decertify the rest of the property." This argument ignores the fact that one consideration when determining whether a piece of property is "receiving water service" is whether there are water facilities or lines *committed to serving* the property. *See id.* at 137. If those lines or facilities exist, it does not matter whether they are located on or simply near the property for which the landowner seeks expedited release. Carving out the land they are located on from the property they serve does not mean that those lines or facilities are not taken into account when determining whether the property for which decertification is requested is "receiving water service" for purposes of section 13.254(a-5). *Id*. The Commission's having permitted the City to amend its petition to remove 6.7 acres from the property for which it sought expedited release from Mountain Peak's certificated service area does not provide a basis for reversing the Commission's order.

### Was the Park Property "receiving water service?"

The Commission determined that the Park Property was not receiving water service from Mountain Peak. It expressly found that the Park Property was "not receiving actual water from Mountain Peak" nor had Mountain Peak committed facilities or lines providing water to the Park Property or performed acts or supplied anything to the Park Property. *See id.* (property is not "receiving water service" if there are no water facilities or lines committed to serving property and

9

CCN holder has not performed any act or supplied anything to that property related to providing water to that property).

In support of its petition for decertification, the City submitted three affidavits from Michael Adams. The contents of Adams's affidavits regarding water service to the Park Property can be summarized as follows:

- Mountain Peak provides no service to the Park Property.

- There is a sewer lift station located on the 6.7 acres removed from the City's decertification petition. The 6.7 acres was platted for a subdivision adjacent to the Park Property and the lift station was constructed at the expense of the developer of the subdivision.

- Under the City's then-existing subdivision regulation, the developer was required to install a water line to the lift station. Pursuant to the subdivision regulation, a one-inch water line was installed that runs from a water line in the subdivision to the lift station. The City is unaware of any use of the water line other than whatever testing was done upon installation.

- There is no written service or extension agreement between the City and Mountain Peak related to the lift station. The City has never paid for or been billed for the construction of the water line or for the delivery of any water to the lift station. There is no meter or city account for the water line.

Mountain Peak submitted three affidavits from Randel Kirk, Mountain Peak's General Manager. The contents of Kirk's affidavits can be summarized as follows:

- Mountain Peak provides water service to a sewer lift station through a two-inch water line that runs from one of Mountain Peak's nearby 12-inch water lines to the lift station where it terminates at an angle-stop valve in a meter box.

- Mountain Peak owns a six-inch water line that runs along the southern boundary of, and is located on, the Park Property. This water line "has the capacity to serve" the Park Property.

10

- Mountain Peak has distribution lines and other facilities near the Park Property that "have the capacity" to provide water service to the Park Property. In a nearby subdivision there are multiple distribution lines including: three 12-inch water lines, two eight-inch water lines, and numerous smaller water lines.

- Mountain Peak has two water plants within a mile of the Park Property, each of which "has the capacity to serve" the Park Property and "capacity committed to" the Park Property. Mountain Peak also owns a one-million gallon storage tank at one of its water plants that was sized to accommodate "potential development on or near" the Park Property.

- Mountain Peak has five groundwater wells within two miles of the Park Property that "could be used to serve" that property. Two other ground water wells are within approximately one mile of the Park Property.

- Mountain Peak "has water supplies sufficient to serve its customers in the area, including the Park Property."

The determination of whether a tract of land is "receiving water service" is a "fact-based inquiry requiring the Commission to consider whether the [utility] has facilities or lines committed to providing water *to the particular tract* in furtherance of its obligation to provide water to that tract pursuant to its CCN." *Id.* at 140 (emphasis in original). In this suit for judicial review, we consider whether the evidence presented in the decertification proceeding "provided reasonable support" for the Commission's determination that the Park Property was not "receiving water service" from Mountain Peak. *See id.* at 141. We conclude that the evidence presented to the Commission regarding Mountain Peak's facilities and water lines provided a reasonable basis for the Commission's finding that the Park Property was not "receiving water service."

The existence of water lines on or near the Park Property does not necessarily mean that the Park Property was "receiving water service." There was no evidence that the water lines

11

were committed to or installed for the purpose of providing water to the Park Property. It was reasonable for the Commission to determine that those water lines were in fact installed for the purpose of providing water to different property—the subdivision. Similarly, although Kirk averred that Mountain Peak's water plants have the capacity to provide water to the Park Property, there is nothing in Kirk's affidavit to indicate that the water plants were constructed for that purpose or that they were otherwise "committed" to providing water to the Park Property. The same is true of Mountain Peak's water wells. The evidence regarding the lift station, which is located on the 6.7 acres that are not part of the Park Property, indicates that it was constructed in connection with development of the subdivision and that the water line was likewise installed to provide water to the lift station rather than in furtherance of providing water to the Park Property. Kirk's affidavit states that the storage tank was sized to accommodate future development generally and does not indicate how that storage capacity was intended to or would be used to provide water service to the Park Property. There is substantial evidence supporting the Commission's finding that Mountain Peak had not performed any act; furnished any thing; or used any facilities or lines for, or committed them to, providing water service to the Park Property. Because there was substantial evidence to support the Commission's finding that the Park Property was not receiving water service, the three criteria for expedited decertification pursuant to section 13.254(a-5) were met.

***Does the Commission's order conflict with a previous agency order?***

It is undisputed, and the Commission found, that in 1996 the City and Mountain Peak entered into an agreement (the 1996 Agreement) providing, among other things, that (1) in an area identified as the "Dual Certificated Area," the City "will provide water distribution service only to

12

industrial customers and Mountain Peak will provide water distribution service only to other-than-industrial customers" and (2) neither the City nor Mountain Peak "will apply to any regulatory, judicial, or governing body to change, alter, or amend the boundaries between their CCNs . . . and will jointly utilize all reasonable actions to resist any changes thereto." In 1997, the Commission's predecessor agency, the TNRCC, approved "the portions of the agreement or contract between [the City] and [Mountain Peak] designating areas to be served by them pursuant to their Certificates of Convenience and Necessity." *See* Tex. Water Code § 13.248 (contracts between retail public utilities, when approved by Commission, are valid and enforceable and are incorporated into appropriate areas of public convenience and necessity). Mountain Peak argued to the Commission that the agency's 1997 approval served to prevent the Commission from subsequently issuing an order, such as the one at issue in this suit for judicial review, that granted the City's request to change the boundaries of Mountain Peak's CCN.[5]

The 1996 Agreement arose in the context of a proceeding before the TNRCC to consider Mountain Peak's application to amend its CCN to establish the boundaries of its certificated service area in Ellis County. The 1996 Agreement reflects the City's agreement to support Mountain Peak's application and Mountain Peak's agreement to support the City's application for TNRCC approval of a "Dual Certificated Area," which we understand to be a geographical area that would be within the certificated service areas of both the City and Mountain Peak.[6] The 1996 Agreement

---

[5] Mountain Peak also suggests that the City's request for release of the Park Property from Mountain Peak's certificated service area is a breach of their agreement. We express no opinion as to the merits of this assertion.

[6] No portion of the Park Property is within the Dual Certificated Area.

also includes the following three "qualifications" to Mountain Peak's agreement to support the

City's application for TNRCC approval of the Dual Certificated Area:[7]

> a.  In the Dual Certificated Area, [the City] will provide water distribution service only to industrial customers, and Mountain Peak will provide water distribution service only to other-than-industrial customers, provided that either may consent on a case-by-case basis to the other providing water distribution service to a customer who would otherwise be ineligible for service from that party, without waiving the limitation herein provided;

> b.  Neither [the City] nor Mountain Peak will apply to any regulatory, judicial or governing body to change, alter or amend the boundaries between their CCNs or the arrangements herein described for the Dual Certificated Area, and will jointly utilize all reasonable actions to resist any change thereto; and

> c.  [The City] will not allow, encourage or cause any change in regulation, law or ordinance which will result in limiting or prohibiting other-than-industrial customers in the Dual Certificated Area (other than ordinances generally applicable to all geographic areas in the City's jurisdiction).

The TNRCC ultimately approved Mountain Peak's application to amend its CCN and ordered

the following:

> The City of Midlothian and Mountain Peak Water Supply Corporation also requested Commission approval of an agreement or contract . . . between the City of Midlothian and Mountain Peak Water Supply Corporation designating the areas to be served by them pursuant to their CCNs. Among other things, the agreement or contract between the City of Midlothian and Mountain Peak Water Supply Corporation provides that in dual certification areas, the City of Midlothian will provide water service only to industrial customers and Mountain Peak Water Supply Corporation will provide water service only to other-than-industrial customers, unless either agrees on a case by case basis to the other providing water service to a customer who would otherwise be ineligible for service from that entity.

---

[7] The boundaries of the Dual Certificated Area were also established by the 1996 Agreement and a map showing the location of the Dual Certificated Area within Mountain Peak's proposed CCN was attached as an exhibit to that agreement.

. . . .

> The portions of the agreement or contract between the City of Midlothian and Mountain Peak Water Supply Corporation designating the areas to be served by them pursuant to their Certificates of Convenience and Necessity, is hereby approved.

Mountain Peak argues that the TNRCC order approved not just its agreement with the City to serve different classes of customers in the Dual Certificated Area established by the 1996 Agreement, but also approved the qualification in subparagraph b of the 1996 Agreement, which Mountain Peak characterizes as an agreement between them to not seek to change, alter, or amend the boundaries of their respective CCNs.[8] We disagree.

The TNRCC order approves only the portions of the 1996 Agreement "designating the areas to be served" by the City and Mountain Peak respectively. Those portions are (1) the delineation of Mountain Peak's CCN, (2) the delineation of the Dual Certificated Area, and (3) the designation of which customers within the Dual Certificated Area would be serviced by the City and which by Mountain Peak. The City's and Mountain Peak's separate agreement not to seek to alter or amend the boundaries between their CCNs does not itself constitute a designation of a service area but, rather, an agreement not to seek to alter one. The TNRCC order did not approve that agreement. Consequently, the TNRCC order does not stand as an impediment to the Commission's

---

[8] Although not relevant to our analysis of this issue, we observe that the agreement does not state that the parties agree to refrain from seeking to change, alter, or amend the boundaries *of* their CCNs, but the boundaries *between* their CCNs.

15

approval of the City's request for expedited release of the Park Property from Mountain Peak's certificated service area.[9]

### Does federal law preempt the Commission's decertification order?

Mountain Peak argues that the Commission's order is preempted by federal law, specifically 7 U.S.C. section 1926(b). *See* 7 U.S.C. § 1926(b) (imposing federal restrictions on competition and customer choice in areas served by federally indebted associations). Section 1926 establishes a loan program through the United States Department of Agriculture to aid designated associations, including conservation and reclamation districts, in developing and operating water and sewer-service facilities in rural areas. *Id.* § 1926(a). Section 1926(b) provides:

> The service provided or made available through any [federally indebted] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

*Id.* § 1926(b). This section constitutes "a congressional mandate that local governments not encroach upon the services provided by [federally indebted] associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means." *North Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 915 (5th Cir. 1996) (per curiam).

---

[9] The City also asserts that the agreement not to seek to alter or amend boundaries applies only to the boundaries of the Dual Certificated Area and not to other portions of Mountain Peak's or the City's certificated service areas. We need not address this issue and express no opinion in that regard.

The prohibition advances two policy purposes: "(1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations (and [the] loans) by protecting them from the expansion of nearby cities and towns." *Id.* A water utility must establish three elements to invoke the protections of section 1926(b): (1) the utility is an "association" within the meaning of section 1926, (2) the utility has a qualifying federal loan outstanding, and (3) the utility "provided or made [service] available" to the disputed area. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 519 (Tex. App.—Austin 2010, no pet.).

The only dispute in the present case is whether Mountain Peak established that it "provided or made [service] available" to the Park Property. The Commission did not take section 1926(b) into account when considering Mountain Peak's decertification petition because Texas Water Code section 13.254(a-6) expressly forbids the Commission from denying "a petition received under Subsection 13.254(a-5) based on the fact that a certificate holder is a borrower under a federal loan program." *See* Tex. Water Code § 13.254(a-6). Thus, instead of reviewing a Commission determination as part of Mountain Peak's suit for judicial review applying the substantial evidence standard, we are reviewing the trial court's determination that Mountain Peak did not qualify for the protection of section 1926(b).

When, as here, there are no findings of fact or conclusions of law, a trial court's judgment will be upheld on any theory supported by the record, *Davis v. Huey*, 571 S.W.2d 859, 862 (1978), and any necessary findings of fact will be implied, *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). "Conclusions of law that are necessary, but not made, are deemed in support of the judgment." *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). Implicit in the trial court's

17

determination here is the finding that Mountain Peak did not meet its burden of proving that it "provided or made [service] available" to the Park Property. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (when neither party requests findings of fact and conclusions of law, it is implied that trial court made all findings necessary to support judgment or order). Thus, we must consider whether the evidence presented to the trial court supports its findings and ultimate conclusion that Mountain Peak had not "provided or made [service] available" to the Park Property.

This Court has previously analyzed the meaning of "provided or made [service] available" under section 1926. *See Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 520-23. The Court held:

> We are persuaded by the majority view of the federal circuit courts—to establish that it "provided or made [service] available" to the disputed area [the utility] was required to plead (and ultimately prove) that it either presently was serving the area or at least presently had the physical means to do so.

*Id.* at 522.[10] The Court noted that the ordinary meaning of the terms "provide" and "make available" "denote actual provision of service or physical capacity and readiness to provide service," and that

---

[10] In *Creedmoor*, this Court reviewed the trial court's ruling on a plea to the jurisdiction. Consequently, the Court reviewed whether Creedmoor's pleadings contained allegations that, if true, would demonstrate that it had "provided or made [service] available" to the disputed area. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 513 (Tex. App.—Austin 2010, no pet.). In this case, we are called upon to determine whether the evidence presented to the trial court supports its conclusion that Mountain Peak had "provided or made [service] available." The *Creedmoor* court's analysis of the legal implications of Creedmoor's allegations are instructive to our review of whether the evidence presented to the trial court supports its conclusion that Mountain Peak had not "provided or made [service] available" to the Park Property.

the protection of section 1926(b) is "'defensive' in nature, intended "to protect territory *already served* by a rural water association." *Id.* (quoting *Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 708 (6th Cir. 2003)).

Mountain Peak points to the evidence previously detailed in this opinion about its facilities and water lines "on and near" the Park Property and emphasizes evidence it presented by affidavit that it had the "capacity" to serve the Park Property. For their part, the City and the Commission point to evidence in the record that the existing water lines did not have the present physical capacity to provide sufficient water to serve the needs of the Park Property when developed and that new facilities would have to be constructed to supplement the existing lines.[11] Specifically, attached to one of Kirk's affidavits is the report of a professional engineering firm stating that the six-inch water line along the southern boundary of the Park Property "did not have sufficient capacity to meet the City's projected needs" and "would need to be upsized to a 12" line and then looped through an area of the Park Property, resulting in the installation of approximately 5,300 linear feet of 12" line" at a cost of approximately $450,000 plus associated boring and casing costs. Also attached to the affidavit is a letter from Mountain Peak to the City in which Mountain Peak's representative states that the parties should address two matters, one of which was "providing water

---

[11] This evidence was part of the administrative record that was admitted as an exhibit in the trial court proceedings. Although Mountain Peak complains that the evidence was not timely filed in the agency proceeding, it provides no supporting authority, and the evidence was not stricken from the agency record. Moreover, Mountain Peak did not object to the admission of that evidence when the administrative record was offered into evidence before the trial court, nor did Mountain Peak seek to prevent the trial court's consideration of that evidence or obtain any ruling with regard to any objections to its admissibility. Thus, this evidence was before the trial court when it made its determination of whether Mountain Peak met the requirements for protection under section 1926(b).

19

for the proposed new athletic park" to be built on the Park Property. The letter includes a proposal for constructing a water line at the City's expense that would deliver water to the Park Property. The City and the Commission assert that this evidence supports the trial court's conclusion that, although Mountain Peak had facilities and water lines that were providing service to nearby properties, they had not yet "provided or [made] service available" to the Park Property, and that considerable additional infrastructure would be needed to accomplish that end.

In *Creedmoor*, this Court held that, in the context of a plea to the jurisdiction, uncontroverted record evidence that the utility "lacked both the infrastructure and water to serve" the development negated any allegations in Creedmoor's petition that it had "provided or made [service] available." *Id.* at 523. Here, there is at least disputed evidence on that issue. We must presume that the trial court resolved any disputed facts in favor of its judgment and that the judgment implies all necessary findings of fact to support it. *See Holt Atherton*, 835 S.W.2d at 83; *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). That is, we must imply a finding by the trial court that Mountain Peak did not in fact have the infrastructure needed to demonstrate a "physical capacity and readiness to provide service" to the Park Property. There is evidence in the record to support the trial court's implied finding that, as a matter of fact, Mountain Peak did not have the physical capacity and readiness to provide service to the Park Property. *See Creedmoor-Maha Water Supply Corp.*, 307 S.W.2d at 522. Mountain Peak has not demonstrated that this finding is not supported by legally or factually sufficient evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (party attacking legal sufficiency of evidence supporting adverse finding on issue on which he had burden of proof must demonstrate that evidence establishes as matter of law vital

20

fact in support of issue); *id.* at 242 (party attacking factual sufficiency of evidence supporting adverse finding on which he had burden of proof must demonstrate that finding is against great weight and preponderance of evidence).

The trial court found, based on legally and factually sufficient evidence, that Mountain Peak had not "provided or made [service] available" to the Park Property. We therefore affirm the trial court's conclusion that 7 U.S.C. section 1926 did not preempt the Commission's order.

## CONCLUSION

We conclude that it was not error for the Commission to permit the City to amend its decertification petition to seek expedited release of the Park Property, exclusive of the 6.7-acre tract, and that substantial evidence supports the Commission's finding that the Park Property met the criteria for expedited release pursuant to section 13.254(a-5). We have also affirmed the district court's conclusion that Mountain Peak was not entitled to invoke the protection of 7 U.S.C. section 1926(b) because it had not "provided or made [service] available" to the Park Property. Consequently, we affirm the district court's judgment affirming the Commission's order approving the City's petition for expedited release.

_____

Scott K. Field, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed: November 2, 2017

21